IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT SUNDIN,  AMANDA KNAPP-ELLIS, and ROBERT SORIANO, on behalf of themselves and a class, | ) ) ) ) | |
| Plaintiffs, | ) ) | 13-CV-1560 |
| vs. | ) ) | Magistrate Judge Sidney I. Schenkier |
| STELLAR RECOVERY, INC., | ) ) | |
| Defendant. | ) | |

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF A CLASS FOR SETTLEMENT PURPOSES, AND APPROVAL OF NOTICE TO THE CLASS AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

**Page No.**

I.    STATEMENT OF FACTS ...................................................................................1

II.    THE PROPOSED SETTLEMENT ......................................................................5

    A.    The Settlement Class ..............................................................................5

    B.    Settlement Relief.....................................................................................5

        1.    Injunctive Relief Parameters......................................................5

        2.    The Cost of the Injunctive Relief...............................................7

        3.    Class Representative Service Awards..........................................8

        4.    Attorneys' Fees and Costs ..........................................................8

        5.    Notice.........................................................................................9

        6.    No Release by Settlement Class Members ..................................9

III.    ARGUMENT......................................................................................................9

    A.    The Settlement Approval Process............................................................9

    B.    The Settlement Merits Preliminary Approval........................................11

        1.    The Proposed Settlement Provides Substantial Relief to the
             Settlement Class Particularly in Light of the Uncertainty of
             Prevailing on the Merits...........................................................11

             a.    Class Counsel Have Secured Valuable Relief for the
                  Class Regarding Stellar's Business Practices ................................11

             b.    A Rule 23(b)(3) Settlement Was Not Practicable.........................12

             c.    The Strength of Plaintiffs' Case....................................13

        2.    Continued Litigation is Likely to be Complex, Lengthy
             And Expensive ..........................................................................14

        3.    The Settlement Resulted from Extensive, Arm's-Length
             Negotiations and is Not the Result of Collusion........................15

i

4.      The Stage of the Proceedings and the Amount of Discovery Completed Supports Preliminary Approval ................................................ 15

E.      The Proposed Class Notice Satisfies Due Process .................................................. 16

F.      Plaintiffs' Requested Fees Are Reasonable ............................................................ 17

G.      The Court Should Grant Class Certification for Settlement Purposes .................... 19

1.      The Rule 23(a) Factors Are Met ............................................................ 20

a.      The Class Is Sufficiently Numerous and Joinder Is Impracticable ................................................................ 20

b.      The Settlement Class Shares Many Common Issues of Law and Fact ..................................................................... 20

c.      Plaintiffs' Claims Are Typical of the Settlement Class ................ 21

d.      Plaintiffs and Their Counsel Are Adequate Representatives ......... 21

H.      The Requirements of Rule 23(b)(2) Are Met ........................................................ 21

I.      Scheduling a Final Approval Hearing Is Appropriate ........................................... 22

IV.      CONCLUSION ................................................................................................................... 23

# TABLE OF CONTENTS

**Page No.**

## FEDERAL CASES

*Aceves v. Stellar Recovery, Inc.*,
    Case No. 3:15-cv-00278 (S.D. Tex.) ..............................................................................4, 5

*Amanda Knapp-Ellis, et al. v. Stellar Recovery, Inc.*,
    Case No. 2:13-CV-01967-RSM (W.D. Wash.) ..................................................................2

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997).........................................................................................................21

*Am. Int'l Grp., Inc. et al., v. ACE INA Holdings, et al.*,
    Nos. 07-cv-2898, 09 C 2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012).................10, 15

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
    616 F.2d 305 (7th Cir. 1980) .................................................................................9, 10, 11

*Bridgeview Heath Care Ctr. Ltd. v. Clark*,
    No. 09 C 5601, 2011 WL 4628744 (N.D. Ill. Sept. 30, 2011)..........................................20

*Califano v. Yamasaki*,
    442 U.S. 682 (1979).........................................................................................................17

*Chapman v. First Index, Inc.*,
    No. 09 C 5555, 2014 WL 840565 (N.D. Ill. March 4, 2014) ...........................................13

*Davenport v. Stellar Recovery, Inc.*,
    Case No. 3:15-cv-01483-HES-JRK (M.D. Fla.)...............................................................5

*Diggs v. Stellar Recovery, Inc.*,
    Case No. 1:15-cv-01260-PLM-PJG (W.D. Mich.)............................................................4

*Elliott v. Weinberger*,
    564 F.2d 1219 (9th Cir. 1977) ........................................................................................16

*Evans v. Stellar Recovery, Inc.*,
    Case No. 1:15-cv-08664 (N.D. Ill.) ..................................................................................5

*Felzen v. Andreas*,
    134 F.3d 873 (7th Cir. 1998) .............................................................................................9

*Gammon v. GC Servs. Ltd. P'ship*,
    162 F.R.D. 313 (N.D. Ill. 1995)........................................................................21

*G.M. Sign, Inc. v. Brinks Mfg. Co.*,
    No. 09 C 5528, 2011 WL 248511 (N.D. Ill. Jan. 25, 2011) ..............................13

*Grant v. Capital Mgmt. Servs., L.P.*,
    No. 10-cv-2471-WQH (BGS), 2014 WL 888665 (S.D. Cal. Mar. 5, 2014).....................12

*Gray v. Stellar Recovery, Inc.*,
    Case No. 1:15-cv-03819-ODE-JCF (N.D. Ga.)....................................................4

*Grok Lines, Inc. v. Paschall Truck Lines, Inc.*,
    No. 14 C 08033, 2015 WL 5544504 (N.D. Ill. Sept. 18, 2015)...................18, 19

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010)........................................................................11

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ............................................................................17

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ....................................................................9, 10, 11

*Laplume v. Stellar Recovery, Inc.*,
    Case No. 2:15-cv-00516-NT (D. Me.)..................................................................5

*Lemon v. Int'l Union of Operating Eng'rs, Local No. 139*,
    216 F.3d 577 (7th Cir. 2000) ............................................................................22

*Little v. Stellar Recovery Inc.*,
    Case No. 2:15-cv-14184-SFC-MJH (E.D. Mich.) ................................................4

*Mars Steel Corp. v. Cont'l Ill. Nat'l. Bank & Trust Co. of Chicago*,
    834 F. 2d 677 (7th Cir. 1987) ..........................................................................15

*McCabe v. Crawford & Co.*,
    210 F.R.D. 631 (N.D. Ill. 2002)........................................................................20

*Mere v. Stellar Recovery, Inc.*,
    Case No. 1:15-cv-24049-FAM (S.D. Fla.) ...........................................................4

*Mims v. Arrow Fin. Servs., LLC*,
    132 S.Ct. 740 (2012)..................................................................................11, 12

*Moise v. Stellar Recovery, Inc.*,
 Case No. 3:15-cv-01204-TJC-MCR (M.D. Fla.)................................................4

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
 246 F.R.D. 621 (C.D. Cal. 2007).....................................................................16

*Mullane v. Cent. Hanover Bank & Trust Co.*,
 339 U.S. 306 (1950)........................................................................................16

*Parker v. Risk Management Alternatives, Inc.*,
 206 F.R.D. 211 (N.D. Illinois 2002)................................................................21

*Pearson v. NBTY, Inc.*,
 772 F.3d 778 (2014).........................................................................................17

*Phillips Petroleum Co. v. Shutts*,
 472 U.S. 797...................................................................................................16

*Randolph v. Crown Asset Mgmt., LLC*,
 254 F.R.D. 513 (N.D. Ill. 2008).......................................................................20

*Redman v. RadioShack Corp.*,
 768 F.3d 662 (7th Cir. 2014) .....................................................................17, 18

*Reliable Money Order, Inc., v McKnight Sales Co., Inc.*,
 281 F.R.D. 327 (E.D. Wis. 2012) ....................................................................20

*Sainvil v. Stellar Recovery, Inc.*,
 Case No. 3:15-cv-01193-BJD-JRK (M.D. Fla.) .................................................4

*Savanna Group, Inc. v. Trynex, Inc.*,
 No. 10-cv-7995, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013)................................13

*Schulte v. Fifth Third Bank*,
 805 F. Supp. 2d 560 (N.D. Ill. 2011) ...............................................................14

*Skelton v. Gen. Motors Corp.*,
 860 F.2d 250 (7th Cir. 1988) ...........................................................................17

*Sledge v. Sands*,
 182 F.R.D. 255 (N.D. Ill. 1998)........................................................................21

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
 463 F.3d 646 (7th Cir. 2006) ...........................................................................11

*Weiler v. Stellar Recovery, Inc.*,
    Case No. 3:15-cv-01199-MMH-JBT (E.D. Mich.) ...........................................................4

*Yaffe v. Powers*,
    454 F.2d 1362 (1st Cir. 1972)...........................................................................................16

## FEDERAL STATUTES

47 U.S.C. §227(b) ..................................................................................................................1

## FEDERAL RULES

Fed. R. Civ. P. 23 ..................................................................................... *passim*

## OTHER AUTHORITIES

Herbert B. Newberg & Alba Conte,
    Newberg on Class Actions (4th ed. 2002) ...........................................................10, 15, 16

Manual for Complex Litig. (4th ed. 2004)..............................................................10, 16

Plaintiffs and Defendant Stellar Recovery, Inc. ("Stellar") have reached a proposed class action settlement in this case involving claims under the Telephone Consumer Protection Act, 47 U.S.C. §227(b) ("TCPA") and the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA").

The settlement provides injunctive relief to the Class, consisting of four components: (1) changes to the way in which Stellar obtains and memorializes the receipt of consent from consumers to receive auto-dialed calls on their cell phones; (2) changes to the way in which Stellar responds to, and memorializes, revocation requests; (3) changes in Stellar's policies and procedures for training staff with respect to the requirements of the TCPA; and (4) a two-year reporting period in which Stellar is to certify compliance with the injunction on a bi-annual basis. Stellar has determined that the cost to implement these components exceeds one million dollars.

For these reasons and those that follow, Plaintiffs respectfully request the Court: (1) grant preliminary approval of the Class Action Settlement Agreement, attached hereto as Exhibit 1[1]; (2) provisionally certify the proposed class pursuant to Fed. R. Civ. P. 23(b)(2); (3) approve the proposed notice plan and find that it satisfies due process; and (4) schedule the final fairness hearing and related dates.

## I.     STATEMENT OF FACTS

Defendant is a privately held nationally licensed third party collection company, headquartered in Florida. Dkt. No. 81, ¶¶ 10-11. Through its calling centers in Jacksonville, Florida and Kalispell, Montana, Stellar contacts consumers throughout the United States in order to collect upon delinquent debts owed to various creditor grantors and financial institutions. *Id.* Plaintiffs allege that telephone calls were made to each of them, using an automatic telephone dialing system or an artificial or pre-recorded voice, without their prior express consent as prohibited by the TCPA. *Id.* ¶¶ 15-33. Specifically, Plaintiffs allege that Stellar has a pattern and practice of obtaining debtors' phone numbers through skip tracing, without scrubbing the telephone numbers to determine which belong

---

[1] Attached as Exhibit 1 is a partially executed copy of the Settlement Agreement. The Parties have agreed to the terms of this Agreement, but are awaiting several signatures. The Parties will supplement the record with a fully executed copy of the agreement upon receipt of all necessary signatures.

to cell phone numbers. *Id.* ¶ 34. Plaintiffs also allege that Stellar fails to cease calling cell phones after persons called have revoked consent. *Id.*

Plaintiff Sundin initiated this class action lawsuit (the "Illinois Action") against Stellar on February 28, 2013 after he received an unwanted, unauthorized, prerecorded call from Stellar on his cell phone. Dkt. No. 1; *see also* Declaration of Cassandra P. Miller ("Miller Decl.") ¶ 2 (Exhibit 2).

Eight months later, Plaintiff Knapp-Ellis brought a separate class action lawsuit against Stellar in the Western District of Washington. *See Amanda Knapp-Ellis, et al. v. Stellar Recovery, Inc.*, Case No. 2:13-CV-01967-RSM (W.D. Wash.) (the "Washington Action"), Dkt. No. 1. Plaintiff Knapp-Ellis alleges she received at least ten phone calls on her cell phone from Stellar in 2013. Washington Action, Dkt. No. 81, ¶ 23. All of the calls consisted of a pre-recorded message for purposes of collecting an allegedly owed debt. *Id.* Like Plaintiff Sundin, Plaintiff Knapp-Ellis never gave Stellar consent to call her cell phone. *Id.* ¶ 25. Although Plaintiff Knapp-Ellis requested that Stellar stop calling her, Stellar continued to place automatic calls with pre-recorded messages to Knapp-Ellis' cell phone. *Id.* ¶¶ 29-29.

Six months later, Plaintiff Knapp-Ellis successfully moved to amend her complaint to add Plaintiff Soriano, who received approximately three to six prerecorded calls between approximately January 2014 and March 2014. *See* Washington Action, Dkt. No. 18; Dkt. No. 81, ¶ 30. Like the other Plaintiffs, Mr. Soriano did not provide prior express consent to receive prerecorded phone calls from Stellar on his cell phone. *Id.* ¶ 32.

The Parties have since sought consolidation of the Illinois and Washington claims. *See* Dkt. No. 81. Beforehand, the Plaintiffs worked together to take both fact and class-related discovery. Miller Decl. ¶ 3; Declaration of Beth E. Terrell ("Terrell Decl.") ¶ 14 (Exhibit 3). All Parties issued and answered written discovery. Miller Decl. ¶ 3; Terrell Decl. ¶ 15. The Plaintiffs took the depositions of the President of Stellar, the Chief Compliance Officer of Stellar, and the Dialer Manager of Stellar. Miller Decl. ¶ 3; Terrell Decl. ¶ 16. Additionally, the Plaintiffs took the deposition of the Executive Vice President of Operations and Chief Financial Officer of LiveVox,

the dialing system Stellar currently uses. Miller Decl. ¶ 3. Plaintiffs also served third party subpoenas for documents on third parties, Comcast, LiveVox, and DialConnection, LLC. Terrell Decl. ¶ 16. Stellar took the deposition of Plaintiff Sundin. Miller Decl. ¶ 3.

Through the discovery process, Plaintiffs learned that Stellar places approximately 500,000 debt collection telephone calls each day through an automated telephone system. Terrell Decl. ¶ 17. Although Stellar obtains some of the telephone numbers it calls from its clients, Stellar admitted it obtains many telephone numbers from skip tracing companies. *Id*. Moreover, Stellar did not "scrub" these telephone numbers to determine whether they belonged to cell phones until early 2013, which coincides with the start of this litigation. *Id*. Although Stellar's dialing system, LiveVox, includes a feature that would scrub for cell phones, Stellar did not use it. *Id*. Stellar disputes Plaintiffs' claim that LiveVox software constitutes an automatic telephone dialing system ("ATDS"), and further maintains that an individualized analysis of each account is required to determine which potential class members consented to calls on their cell phones. *Id.* ¶ 18.

In response to Plaintiffs' discovery requests, Stellar produced a terabyte of call data. Terrell Decl. ¶ 19. Plaintiffs hired an expert to analyze the call data and determined that over just six months, Stellar placed approximately 162 million calls. Miller Decl. ¶ 4. Of those calls, 73 million were made to cell phones, 5 million of which were unique cell phone numbers. *Id*. Based on these figures, Plaintiffs estimate Stellar calls approximately 10 million unique cell phone numbers each year, which translates to 45 million unique cell phone numbers during the entire class period. *Id.*

After Plaintiffs analyzed the call data, the Parties requested a settlement conference with the Court that would include Plaintiffs in the Washington Action. Miller Decl. ¶ 5. On May 14, 2015, the Parties participated in a settlement conference before this Court. *Id.* Unable to reach an agreement, the Parties participated in another phone conference before this Court in June, 2015 and scheduled a second settlement conference for August 12, 2015. *Id.* ¶¶ 5-6. As part of those discussions, Plaintiffs reviewed Stellar's financial information and insurance policies. *Id.* ¶ 5. Based on this review, Plaintiffs determined that Stellar had insufficient finances to provide financial relief

3

to proposed class members, even under a very narrow class definition. *Id.* Finally, Stellar's insurance company denied any coverage for the claims. *Id.*

Despite the stark reality of Stellar's finances, with the Court's help, the Parties explored other ways to provide relief to class members during the settlement conferences. Miller Decl. ¶ 6. Although Stellar's finances made it impossible to provide monetary relief to class members, the Parties and the Court determined that class members would benefit from injunctive relief that required Stellar to make significant changes to its autodialing practices. *Id.* In August 2015, prior to the second scheduled conference with this Court, the Parties reached an agreement in principle. Miller Decl. ¶ 7. Since then, counsel for Plaintiffs have worked rigorously with Stellar to reach a compliance plan that will provide appropriate relief to class members. *Id.* ¶ 8. At all times the Parties' settlement negotiations were highly adversarial, non-collusive and at arm's-length. *Id.*

Now, after years of litigation, including extensive discovery, and a settlement conference over which this Court presided, Plaintiffs and Stellar have entered into a Settlement Agreement. The terms of the Settlement Agreement, which require substantial injunctive relief, provide for a fair, reasonable, and adequate resolution of the claims of Plaintiffs and the Settlement Class in light of the large number of class members, Stellar's limited financial resources, and the lack of insurance coverage.

Finally, the settlement and its injunctive relief are necessary in order to stop repeated harm. Since Plaintiff Sundin brought his claim three years ago, Stellar has faced ten or more new lawsuits under the TCPA, some of which allege violations as late as 2015. *See, e.g., Diggs v. Stellar Recovery, Inc.*, Case No. 1:15-cv-01260-PLM-PJG (W.D. Mich.); *Little v. Stellar Recovery Inc.*, Case No. 2:15-cv-14184-SFC-MJH (E.D. Mich.); *Gray v. Stellar Recovery, Inc.*, Case No. 1:15-cv-03819-ODE-JCF (N.D. Ga.); *Mere v. Stellar Recovery, Inc.*, Case No. 1:15-cv-24049-FAM (S.D. Fla.); *Moise v. Stellar Recovery, Inc.*, Case No. 3:15-cv-01204-TJC-MCR (M.D. Fla.); *Weiler v. Stellar Recovery, Inc.*, Case No. 3:15-cv-01199-MMH-JBT (E.D. Mich.); *Sainvil v. Stellar Recovery, Inc.*, Case No. 3:15-cv-01193-BJD-JRK (M.D. Fla.); *Aceves v. Stellar Recovery, Inc.*, Case No. 3:15-cv-00278 (S.D.

Tex.); *Evans v. Stellar Recovery, Inc.*, Case No. 1:15-cv-08664 (N.D. Ill.); *Laplume v. Stellar Recovery, Inc.*, Case No. 2:15-cv-00516-NT (D. Me.); *Davenport v. Stellar Recovery, Inc.*, Case No. 3:15-cv-01483-HES-JRK (M.D. Fla.).

## II.     THE PROPOSED SETTLEMENT

### A.     The Settlement Class

The proposed settlement would establish a "Settlement Class" defined as:

> (a) all persons with United States cellular numbers, (b) who on or after February 28, 2009 (c) received automated calls from Defendant (d) where Defendant did not have prior express consent to make the automated calls (for example, where the number was obtained through skip tracing or captured by Defendant's equipment from an inbound call, or Defendant called the number after consent had been revoked).

### B.     Settlement Relief

1.     <u>Injunctive Relief Parameters.</u>

The Settlement Agreement provides injunctive relief to the Settlement Class that requires Stellar to stop practices that were previously part of its business model. The injunctive relief consists of four components: changes to the way in which Stellar obtains and memorializes the receipt of consent from consumers to receive auto-dialed calls on their cell phones; changes to the way in which Stellar responds to, and memorializes, revocation requests; changes in Stellar's policies and procedures for training staff with respect to the requirements of the TCPA; and a two-year reporting period in which Stellar is to certify compliance with the injunction on a bi-annual basis. Settlement Agreement, § D. Specifically:

(a)     Stellar shall notate consent in its written account documentation if and when said consent is obtained, and if and when consent is revoked;

(b)     Stellar shall strictly and routinely search and scrub every number provided to it by the original creditor to determine if it is a cellular telephone number. If the results of a scrub indicate that a number is assigned to a cellular telephone, Stellar shall notate that said number is assigned to a cellular telephone in the written account documentation for the corresponding account.

(c)     If Stellar obtains any new telephone numbers for debtors from any source (relatives, public resources, skip tracing, etc.), then those numbers must be scrubbed utilizing reasonable procedures to determine which phone numbers are cellular telephone numbers.

(d)     For each number identified as a cellular telephone number or for which Stellar does or may know to be a cellular telephone number, said number cannot be called utilizing Stellar's auto-dialer unless Stellar has written documentation of prior express consent as contemplated by the TCPA.

(e)     For each cellular telephone number wherein Stellar does not have concrete evidence of consent, Stellar must use human intervention to dial the number until and unless Stellar is able to obtain prior express consent.

(f)     Prior express consent must be clear and must be formally in writing or verifiable by recorded telephone call via the debtor in question.

(g)     Prior express consent must be clearly and conspicuously noted in the computer system utilized by Stellar.  Stellar must also clearly and conspicuously note the revocation of consent in its computer system.

(h)     Stellar agrees to submit copies of any putative individual or class action lawsuits filed against it and asserting a claim pursuant to the TCPA during the reporting period to Class Counsel beginning 6 months from the date that this agreement is signed and every 6 months thereafter until expiration of the injunction.  Reports from Stellar are due on September 28, 2016, March 28, 2017, September 28, 2017 and March 28, 2018.

(i)     Finally, Stellar must incorporate into its employee handbooks sufficient training regarding the TCPA.  Stellar must devote classes and training for new and current debt collection employees as well as supervisory staff concerning: the TCPA, the meaning and how to obtain prior express consent as defined by the TCPA, the effect and statutory damages permitted under the TCPA, and prudent procedures for use and application of phone numbers obtained by debt collection employees during normal collection efforts.  Stellar shall create a new TCPA compliance manager

6

(who may be a current employee of Stellar and the new compliance manager position need not be dedicated exclusively to that position) who shall review the training information, work to train staff, and oversee debt collection practices and their TCPA compliance or lack thereof.

Settlement Agreement § D.

### 2. The Cost of the Injunctive Relief

The foregoing injunctive relief requires Stellar to make significant changes to its business practices, some of which Stellar made during the pendency of this lawsuit. Stellar estimates that the changes it has already made have reduced Stellar's production by 25 to 30 percent, at a cost of between $250,000 and $750,000. Declaration of Garrett Schanck in Support of Preliminary Approval of Class Action Settlement ("Schanck Decl.") ¶ 6 (Exhibit 4). Stellar estimates that the total implementation cost moving forward, including past, present, and future costs associated with the injunctive relief, will be $1,000,000.00, at a minimum. *Id.*

Specifically, Stellar estimates the training it will provide to new and current employees will cost $15,000 annually. *Id.* ¶ 5(a). Stellar hired a specialized vendor, Interactive Data, Inc. ("IDI"), to scrub all telephone numbers Stellar receives from any source, on a daily basis, at a cost of $1,200.00 per month in order to identify those telephone numbers which are assigned to cellular telephones. *Id.* ¶ 5(b).

Now, immediately upon identifying a telephone number as assigned to a cellular telephone, Stellar makes a notation within its Latitude collection software, triggering firm software restrictions that prevent the telephone number from being dialed by an automated system unless Stellar first obtains express permission to do so from the individual to whom the telephone number is assigned. *Id.* ¶ 5(c). Stellar has agreed to follow the same procedure regarding cellular telephones for which persons have revoked consent. *Id.* ¶ 5(f).

For all accounts, Stellar has agreed to store written account information and recorded telephone calls for at least four years, at a cost of $15,000 per month, and up to $27,000 per month. *Id.* ¶ 5(f), (g). Stellar has agreed to use the recordings to perform improved ongoing quality assurance

and compliance evaluations of its employees, and to ensure that the employees comply with Stellar's stricter approach to TCPA compliance, and specifically regarding consent or revocation thereof. *Id.* ¶ 5(h). Moreover, Stellar now routinely and randomly screens recorded calls to ensure that its employees are adhering to its stricter TCPA compliance measures, and quality assurance training representatives review recorded calls with Stellar employees during individual one-on-one counseling sessions in order to address any TCPA compliance failures. *Id.*

Stellar has also agreed to increased Quality Assurance ("QA") implementation measures, including reviewing calls daily via live monitoring and recorded call playback, with training and counseling performed on the spot with each agent when areas for improvement are identified. *Id.* Stellar will conduct two or more written assessments of its collectors per month. *Id.* While the Parties were negotiating the terms of the injunctive relief in September 2015, Stellar hired an additional QA employee whose primary responsibility is to monitor and review calls, at an annual cost of $45,000.00. *Id.* Finally, beginning in May 2016, Stellar's QA department shall also hold monthly compliance meetings with all collectors, at which selected calls will be played and discussed in a group setting for further training and development. *Id.*

       3.     Class Representative Service Awards

The Settlement Agreement also provides that each of the three Plaintiffs to receive $10,000 (collectively, $30,000) for his or her statutory damages and services as representatives of the Class. Settlement Agreement ¶ 2.3. These awards will compensate Plaintiffs for their time and effort and for the risk they undertook in prosecuting this case.

       4.     Attorneys' Fees and Costs

Before the hearing on final approval of the settlement, Class Counsel will apply to the Court for an award of attorneys' fees and costs in the amount of one hundred five thousand dollars ($105,000) to Class Counsel. Settlement Agreement ¶ 2.4. Far from a "clear-sailing" agreement, Class Counsel's fee application, in which they seek minimal compensation for the work they have already performed, not including the remaining work to be performed in documenting the settlement,

making sure the settlement is fairly implemented, and obtaining dismissal of the action, is subject to Court-approval. Terrell Decl. ¶ 20. This amount is reasonable in light of the lengthy litigation and because Class Counsel has incurred approximately $300,000 in fees, and costs that exceed $12,000. *Id.*

5.    <u>Notice</u>

An additional benefit of the settlement, although not required by Rule 23(b)(2), is notice. Since direct notice is impracticable, notice will be sent by electronic mail to legal aid societies, the attorneys general of all fifty states, and other organizations that represent consumers. Miller Decl. ¶ 9. Class Counsel believes that this form of notice will be more effective than, say, a notice published in USA Today, a form of notice which is typical in many class action settlements when direct notice is impracticable. *Id.* Stellar will be responsible for all costs of notice. Settlement Agreement ¶ 2.5.

6.    <u>No Release by Settlement Class Members</u>

Although the named Plaintiffs have released all of their claims against Stellar, members of the Class do not release their rights to pursue individual or collective damages claims against Stellar. Settlement Agreement ¶ 2.6.

### III.    <u>ARGUMENT</u>

**A.    The Settlement Approval Process**

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312–13 (7th Cir. 1980) (noting "[i]n the class action context in particular there is an overriding public interest in favor of settlement") (citations, quotations, and internal marks omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *see also* 4 Herbert B. Newberg & Alba Conte, <u>Newberg on Class Actions</u> ("Newberg") § 11.41 (4th ed. 2002) (citing cases). The traditional means for handling claims like

those at issue here — individual litigation — would be impracticable as they would unduly tax the court system and require a massive expenditure of public and private resources. Thus, the proposed settlement is the best vehicle for Settlement Class Members to receive relief in a prompt and efficient manner.

A court may approve a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A proposed class settlement is presumptively fair where it "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." Newberg § 11:41; *Am. Int'l Grp., Inc. et al., v. ACE INA Holdings, et al.,* Nos. 07-cv-2898, 09 C 2026, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (quotation and internal cite omitted). Approval of a class action settlement is a two-step process. *Armstrong*, 816 F.2d at 314. At the preliminary approval stage, the question for this Court is whether the settlement falls "within a range of possible approval." *Id.* If the district court preliminarily approves a class action settlement, it then proceeds to the second step in the review process – the fairness hearing. *Id.*; Manual for Complex Litig. (Fourth) § 21.633 (4th ed. 2004).

In assessing the fairness, reasonableness and adequacy of a settlement, courts view the facts in the light most favorable to the settlement. *Isby*, 75 F.3d at 1199. The Court "should not substitute [its] own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315. To evaluate fairness at the preliminary approval stage, courts consider the following factors: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the complexity, length and expense of the litigation; (3) the presence of collusion in reaching a settlement; and (4) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006); *see Armstrong*, 616 F.2d at 314; *Isby*, 75 F.3d at 1199.

As set forth in the following, the settlement here warrants preliminary approval.

10

**B.** **The Settlement Merits Preliminary Approval**

1.  The Proposed Settlement Provides Substantial Relief to the Settlement Class
    Particularly in Light of the Uncertainty of Prevailing on the Merits

While no one fairness factor is to be given dispositive weight, courts have consistently stated that the relative strength of the plaintiff's case on the merits as compared to what the defendant offers by way of settlement is the most important consideration. *See Isby,* 75 F.3d at 1199; *Armstrong,* 616 F.2d at 322. Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

   a.  *Class Counsel Have Secured Valuable Relief for the Class Regarding Stellar's Business Practices*

The Settlement Agreement, which requires Stellar to change its business practices, provides significant value to the Settlement Class Members. Prior to this litigation, Stellar had a pattern and practice of calling cell phones obtained via skip tracing or otherwise captured by Stellar's dialer in violation of the TCPA. Likewise, Stellar had a pattern and practice of disregarding requests that Stellar stop calling cell phones. The benefit the Settlement Agreement provides to Settlement Class Members is an injunction against further violations of the TCPA. During the two-year period in which the injunction is in effect, Stellar will implement policies and procedures geared toward ensuring that consent is obtained from consumers before any numbers are placed in Stellar's dialer. These policies and procedures include increased training, changes to the software and hardware utilized by Stellar, and detailed reporting under penalty of perjury.

The injunctive relief obtained for the Class comports with the purpose of the TCPA — to protect consumers from unwanted and harassing calls. *See Mims v. Arrow Fin. Servs., LLC,* 132 S.Ct. 740, 745 (2012). Moreover, the relief is consistent with the injunctive relief approved in *Grant v. Capital Mgmt. Servs., L.P.*, No. 10-cv-2471-WQH (BGS), 2014 WL 888665 (S.D. Cal. Mar. 5, 2014), a TCPA case involving similar facts. There, the district court approved a Rule 23(b)(2) settlement that required the defendant to abide by injunctive terms that are nearly identical to those here. *Id.* at

*2. Specifically, the defendant was required to adopt identifying and blocking technology it did not previously employ to ensure it did not make unlawful calls, and to provide declarations under perjury every six months confirming compliance with the injunction. *Id.*

Finally, the changes to Stellar's business practices are valuable to the Settlement Class because they come with a steep price tag that Stellar alone must pay. Stellar estimates the total cost of implementing the injunctive relief as $1,000,000.00, at a minimum. Schanck Decl. ¶ 6. Specifically, Stellar estimates the training it will provide to new and current employees will cost $15,000 annually. *Id.* ¶ 5(a). Stellar hired a specialized vendor, IDI, to scrub all telephone numbers Stellar receives from any source, on a daily basis, at a cost of $1,200.00 per month in order to identify those telephone numbers which are assigned to cellular telephones. *Id.* ¶ 5(b). Stellar has agreed to store written account information and recorded telephone calls for at least four years, at a cost of $15,000 per month, and up to $27,000 per month. *Id.* ¶ 5(f), (g). Finally, Stellar hired an additional QA employee whose primary responsibility is to monitor and review calls, at an annual cost of $45,000.00. *Id.*

### b.    *A Rule 23(b)(3) Settlement Was Not Practicable*

Although Class Counsel initially sought to settle the class claims pursuant to Rule 23(b)(3), they concluded after receipt of formal and informal discovery that a Rule 23(b)(3) settlement was not practicable. Plaintiffs' counsel identified 5 million unique cellular telephone numbers that Stellar called during a six-month period alone, with no corresponding evidence of consent. Miller Decl. ¶ 4. Therefore, the number of class members during the entire class period may be up to ***45 million***. *Id.* The TCPA provides for statutory damages of $500 per call. At these numbers, Stellar would face a judgment in the billions. Stellar's financials show that it does not have the financial ability to fund a Rule 23(b)(3) settlement in the one million dollar range, let alone the billion-dollar range. Miller Decl. ¶ 5. Moreover, Stellar's insurance company denied any coverage for the claims. *Id.* For the same reasons, Stellar does not have the financial resources to send either direct or publication notice to the Settlement Class.

Finally, it is not possible to determine from Stellar's records the identity of all the Settlement Class Members. Stellar may have made unauthorized calls to up to 45 million cellular telephones since 2009 (the year the class period began). Miller Decl. ¶ 4. Because some of those cell phone numbers were "skip-traced," it is possible that many of those numbers did not belong to the actual debtor, but rather a friend or relative, making identification of all Settlement Class Members impossible.

For all these reasons, a Rule 23(b)(3) settlement was impracticable.

> c. *The Strength of Plaintiffs' Case*

Plaintiffs continue to believe that their claims against Stellar have merit and they would make a compelling case if their claims were tried. Nevertheless, Plaintiffs and the Settlement Class would face a number of difficult challenges if the litigation were to continue.

First, Stellar denies it lacked consent to contact Plaintiffs or class members, and has consistently argued that class certification is not appropriate because the individualized question of whether a customer consented will predominate at trial. "Courts are split on whether the issue of individualized consent renders a TCPA class uncertifiable on predominance and ascertainability grounds, with the outcome depending on the specific facts of each case." *Chapman v. First Index, Inc.*, No. 09 C 5555, 2014 WL 840565, at *2 (N.D. Ill. March 4, 2014) (citing cases). For example, in *Savanna Group, Inc. v. Trynex, Inc.*, No. 10-cv-7995, 2013 WL 66181, at *3 (N.D. Ill. Jan. 4, 2013), the court granted class certification and rejected the defendant's argument that questions of consent caused individual issues to predominate, noting that the defendant had not offered evidence tending to show that any particular class member consented to the faxes at issue. On the other hand, in *G.M. Sign, Inc. v. Brinks Mfg. Co.*, No. 09 C 5528, 2011 WL 248511, at *8 (N.D. Ill. Jan. 25, 2011), the court declined to certify a class, finding that the defendant offered evidence illustrating that consent could not be shown with common proof. If Stellar were able to present convincing facts to support its position, there is a risk that the Court would decline to certify the class, leaving only the named Plaintiffs to pursue their individual claims.

Second, Stellar produced financials to Plaintiffs that show Stellar has insufficient financial resources to pay class members even a dollar per class member toward a judgment estimated at more than one billion dollars from a verdict for the millions of calls Stellar made to cell phones during the class period. Miller Decl. ¶ 5. Moreover, Stellar has threatened to enter bankruptcy in the face of judgment. Terrell Decl. ¶ 21. With a potential judgment in the billions, it is likely that Stellar's threat would become a reality.

Finally, there is a risk of losing a jury trial. And, even if Plaintiffs did prevail at trial, any judgment could be reversed on appeal (or subject to bankruptcy). By contrast, the settlement provides substantial and meaningful relief to Settlement Class Members without delay, particularly in light of the above risks that Settlement Class Members would face in litigation.

2. Continued Litigation Is Likely to Be Complex, Lengthy, and Expensive

Litigation would be lengthy and expensive if this action were to proceed. Although the Parties have commenced formal discovery, extensive motion work, including Plaintiffs' motion for class certification, remains. Rather than a subset of call data, Plaintiffs would need to engage their expert to analyze the full *terabyte* (or, a trillion bytes) of call data that Stellar produced. Stellar would likely need to do the same. Realistically, it could be at least a year before the case would proceed to trial. Even if Plaintiffs obtained a judgment, Stellar would likely appeal, which would further delay any relief to class members. The settlement avoids these risks and provides immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

3. The Settlement Resulted from Extensive, Arm's-Length Negotiations and Is Not the Result of Collusion

The requirement that a settlement be fair is designed to prevent collusion among the Parties. *Mars Steel Corp. v. Cont'l Ill. Nat'l. Bank & Trust Co. of Chicago*, 834 F. 2d 677, 684 (7th Cir. 1987) (approving settlement upon a finding of no "hanky-panky" in negotiations). There is an initial

presumption that a proposed settlement is fair and reasonable when it was the result of arms-length negotiations. Newberg § 11:42; *see also Am. Int'l Grp.*, 2012 WL 651727, at *10.

Here, the proposed settlement was negotiated after years of litigation, followed by several months of highly contested settlement negotiations, including multiple settlement conferences. Counsel for the Parties are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases. Terrell Decl. ¶¶ 2-14; *see also* Exhibit 5. In negotiating this settlement, Class Counsel had the benefit of years of experience with class actions in general and a familiarity with the facts of this case in particular. *Id*. Moreover, the Parties benefitted from the Court's active participation throughout the negotiation process. The fact that Plaintiffs achieved an excellent result for the Settlement Class despite facing significant hurdles is a testament to the non-collusive nature of the proposed settlement.

    4.    The Stage of the Proceedings and the Amount of Discovery Completed Supports Preliminary Approval

Plaintiffs' counsel have thoroughly analyzed the factual and legal issues involved in this case. Miller Decl. ¶ 3; Terrell Decl. ¶ 15. Plaintiffs' counsel served and responded to written discovery, diligently reviewed the information that Stellar produced, and had multiple discovery conferences with Stellar to insist upon complete discovery responses, including complete information regarding the calls. *Id.*

Plaintiffs took the depositions of the President of Stellar, the Chief Compliance Officer of Stellar and the Dialer Manager of Stellar. *Id.* Additionally, Plaintiffs took the deposition of the Executive Vice President of Operations and Chief Financial Officer of LiveVox, the dialing system Stellar uses. Miller Decl. ¶ 3. In addition, Plaintiffs served subpoenas for documents on third parties, Comcast, LiveVox, and DialConnection, LLC. Terrell Decl. ¶ 16.

Plaintiffs also retained an expert to analyze part of Stellar's call data. Miller Decl. ¶ 4. Plaintiffs' expert determined that over just six months, Stellar placed approximately 162 million calls. *Id.* Of those calls, 73 million were made to cellular telephones, 5 million of which were unique cellular telephone numbers. *Id.* Based on these figures, Plaintiffs estimate Stellar calls approximately

10 million unique cellular telephone numbers each year, which translates to 45 million unique cellular telephone numbers during the entire class period. *Id.*

Although work remained, including additional extensive, expensive expert analysis, which would be required for class certification, Plaintiffs' counsel were well-informed about the strengths and weaknesses of their case at the time they reached settlement in this case. Terrell Decl. ¶¶ 19, 21. Thus, this factor favors settlement.

**E.    The Proposed Class Notice Satisfies Due Process**

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1); *see also* <u>Manual for Complex Litig.</u> at § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

"As a general matter, less precision is required of class definitions under Rule 23(b)(2) than under Rule 23(b)(3), where mandatory notice is required by due process." *Multi–Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 246 F.R.D. 621, 630 (C.D. Cal. 2007); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (holding that notice of right to opt-out of suit for money damages is required by the Due Process Clause); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) (stating that in contrast to certification of a subdivision (b)(3) class, "notice to the members of a(b)(2) class is not required and the actual membership of the class need not therefore be precisely delimited."). Manageability is not as important a concern for injunctive classes as for damages classes. *See Elliott v. Weinberger*, 564 F.2d 1219, 1229 (9th Cir. 1977) ("by its terms, Rule 23 makes manageability an issue important only in determining the propriety of certifying an action as a(b)(3), not a(b)(2), class action."), *aff'd in pertinent part sub nom. Califano v. Yamasaki*, 442 U.S. 682, 701 (1979).

Although notice is generally not required as part of a Rule 23(b)(2) settlement, the Parties

16

have nonetheless agreed to a notice program that constitutes the best notice practicable under the circumstances, provides due and sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23. Settlement Agreement ¶ 2.7. The notice contemplated by the Settlement Agreement is superior to the traditional publication notice in a national newspaper such as USA Today. Miller Decl. ¶ 9. Many Class members, including persons with limited financial resources, are unlikely to read national newspapers such as USA Today. *Id.* Class Counsel have attempted to devise a notice which is more likely to reach a greater number of persons likely to be Class members, sent via electronic mail to legal aid and social service organizations whose clients may be of limited means. *Id.* Finally, the proposed notice is short and easily duplicated and disseminated, in order to provide persons in the Settlement Class with enough information to evaluate whether to participate in the settlement. Settlement Agreement, Ex. A.

## F.   Plaintiffs' Requested Fees Are Reasonable

The proposed Settlement meets the standards outlined in the previous section for preliminary approval of a settlement. In determining the reasonableness of attorneys' fees, courts "must balance the competing goals of fairly compensating attorneys for their services rendered on behalf of the class and of protecting the interests of the class members in the fund." *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988). "The object in awarding a reasonable attorney's fee … is to give the lawyer what he would have gotten in the way of a fee in arm's length negotiation, had one been feasible." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). Generally speaking, the "ratio that is relevant … is the ratio of (1) the fee to (2) the fee plus what the class members received." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (2014) (quoting *Redman v. RadioShack Corp.*, 768 F.3d 662, 630 (7th Cir. 2014)). Although there is no hard-and-fast rule, the Seventh Circuit has opined that in consumer class actions, attorneys' fees awarded to class counsel "should not exceed a third or at most a half of the total." *Redman*, 768 F.3d at 631.

Plaintiffs' request for an award of attorneys' fees in the amount of $105,000 is appropriate because the Settlement puts an end to a persistent injury to persons who never consented to being

called on their cellular telephones, or who revoked previous consent to be called. At the low-end, the settlement's value is $385,000 ($250,000 existing cost of injunctive relief + $30,000 class representative awards + $105,000 attorneys' fees). At the high-end, the settlement's value is $1,135,000 ($1,000,000 existing and future cost of injunctive relief + $30,000 class representative awards + $105,000 attorneys' fees). At the low-end, Plaintiffs' request for fees constitutes 27% of the total settlement value. At the high-end, Plaintiffs' request for fees constitutes 9% of the total settlement value. Both percentages are well within the acceptable range of fee awards in the Seventh Circuit.

For similar reasons, the current settlement overcomes the deficiencies found by the Court in *Grok Lines, Inc. v. Paschall Truck Lines, Inc.*, No. 14 C 08033, 2015 WL 5544504 (N.D. Ill. Sept. 18, 2015) (Chang, J.). There, the court found that the settlement in a junk fax blasting case was unfair and unreasonable to the class because (1) the injunctive relief was of no value to the class because the conduct at issue involved "an isolated fax" blast, which was based on "the single purchase of a single list of fax numbers," and the defendant "had no plans to repeat" the fax advertisements, and (2) based on the size of the class, the amount awarded in attorneys' fees could have provided substantial relief to the class members. *Id.* at *3-7.

In contrast, here, Stellar is a debt collector who relies heavily on its auto dialers as part of its business model in contacting and obtaining payments from alleged debtors. Through discovery, Plaintiff's learned that during a four-year period, Stellar called approximately 10 million unique cellular telephone numbers each year, which translates to 45 million unique cellular telephone numbers during the entire class period. Miller Decl. ¶ 3. Stellar's use of its autodialing equipment was not a "one-time marketing experiment," as was the case in *Grok-Lines*, but rather, is "part of [Stellar's] established or planned" business strategy. *Grok Lines, Inc.*, at *4. Prior to the filing of the present Lawsuit, Stellar had very few, if any, procedures in place for (1) training employees on the TCPA and its compliance (2) scrubbing for cell phone numbers (3) tracking and monitoring of consent or retraction of consent from debtors or (4) screening and reporting of compliance as it relates

18

to the TCPA. Schanck Decl., ¶¶ 3-5. Therefore, the injunctive relief provided by the terms of the current agreement "modify, or stop altogether, practices and strategies that [are] part and parcel of a continuing business model." *Id.*

Furthermore, and contrary to the facts of the *Grok Lines* case where the class consisted of only 180 individuals, here, based on the call log data confirmed by Plaintiffs' expert, the class consists of 45 million unique class members. In *Grok Lines*, a portion of the $100,000 requested in attorney fees, could have provided a reasonable award to the class members for damages. Here, however, where Stellar's net worth is limited and there is no insurance coverage, awarding attorneys' fees to the class members would require the class members to provide a release of their claims for damages in exchange for a miniscule fraction of a penny.

By contrast, the proposed Settlement allows the Settlement Class Members to retain their claims for damages, while imposing real restrictions on Stellar's business practices and use of its dialing equipment, providing real relief to those who are subject to present and future harm by Stellar's current practices. *Grok Lines, Inc.*, at *4.

## G.    The Court Should Grant Class Certification for Settlement Purposes

For settlement purposes only, Plaintiffs respectfully request that the Court provisionally certify the Settlement Class defined as:

> (a) all persons with United States cellular numbers, (b) who on or after February 28, 2009 (c) received automated calls from Defendant (d) where Defendant did not have prior express consent to make the automated calls (for example, where the number was obtained through skip tracing or captured by Defendant's equipment from an inbound call, or Defendant called the number after consent had been revoked).

Settlement Agreement ¶ 2.1. As detailed below, the Settlement Class and subclasses meet all of the applicable certification requirements.

### 1.    The Rule 23(a) Factors Are Met

#### a.    *The Class Is Sufficiently Numerous and Joinder Is Impracticable*

"Although there is no bright line test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)." *See, e.g.*, *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002)

(citations and internal marks omitted).  Here, Plaintiffs identified from Stellar's data approximately 5 million unique accounts connected to cellular telephone numbers in 2013 alone, suggesting there may be 45 million or more unique accounts in the Settlement Class.  The large number of persons in the Settlement Class, coupled with the fact that they are geographically disbursed throughout the country, renders joinder impracticable.  *See, e.g., Randolph v. Crown Asset Mgmt., LLC*, 254 F.R.D. 513, 517 (N.D. Ill. 2008) (joining hundreds of claims impracticable where claimants are "widely scattered" and the amount in controversy is small).  Numerosity is clearly satisfied.

> b.      *The Settlement Class Shares Many Common Issues of Law and Fact*

The commonality requirement of Rule 23(a)(2) is satisfied because there are many questions of law and fact common to the Settlement Class that focus on Stellar's common practice of using an automated dialing system to call persons in the Settlement on their cell phones.  *See Reliable Money Order, Inc., v McKnight Sales Co., Inc.*, 281 F.R.D. 327, 332-33 (E.D. Wis. 2012) (finding commonality requirement satisfied where class members all alleged they received faxes in violation of the TCPA and the events surrounding the transmission of each fax were identical); *Bridgeview Heath Care Ctr. Ltd. v. Clark*, No. 09 C 5601, 2011 WL 4628744, at *5 (N.D. Ill. Sept. 30, 2011) (finding commonality satisfied in TCPA class where the same evidence concerning the defendant's advertising campaign applied to plaintiffs' and class members' claims).  Here, common issues of fact and law include (1) whether Stellar obtained valid prior express consent from consumers before calling their cellular telephones; and (2) damages, including whether the alleged violations were willful or knowing.  Because persons in the Settlement Class here all suffered the same injury and are generally subject to the same defenses, commonality is satisfied.

> c.      *Plaintiffs' Claims Are Typical of the Settlement Class*

Typicality exists where the claim involves the same "event, practice or course of conduct that gives rise to the claim of the other class members, and if the claims are based on the same legal theory."  *Parker*, 206 F.R.D. at 213.  Here, Plaintiffs' claims are based on Stellar's systematic use of automated calls to cell phone numbers that were never provided to Stellar, or to the creditor that

claimed a debt was owed, or calls made to cell phone numbers after consent had been revoked. Because Plaintiffs' claims arise from the same course of conduct, typicality is satisfied.

> ### d. Plaintiffs and Their Counsel Are Adequate Representatives

Adequacy requires the representative of a class to provide fair and adequate representation of the class. Fed. R. Civ. P. 23 (a)(4). To satisfy the adequacy requirement, (1) the representative cannot have interests antagonistic to the class; (2) the representative must have a sufficient interest in the outcome of the litigation; and (3) counsel for the representative must have appropriate experience, qualifications, and competency. *Sledge v. Sands*, 182 F.R.D. 255, 259 (N.D. Ill. 1998); *Gammon v. GC Servs. Ltd. P'ship*, 162 F.R.D. 313, 317 (N.D. Ill. 1995).

Here, Plaintiffs have no interests that are antagonistic to or in conflict with persons in the Settlement Class they seek to represent and have a substantial interest in the outcome of this action, since they all received the same unlawful calls that persons in the Settlement Class received. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 625–26 (1997) (courts look simply at whether the representatives' interests are in any way antagonistic to or in conflict with those of the class members). In addition, Class Counsel are active practitioners with substantial experience in consumer law and class action litigation, including cases very similar to this one. Terrell Decl. ¶¶ 2-13; *see also* Exhibit 5. The requirements of Rule 23(a) therefore are satisfied.

## H.  The Requirements of Rule 23(b)(2) Are Met

The requirements of Rule 23(b)(2) are satisfied because Stellar has acted on grounds generally applicable to the Settlement Class, making appropriate final injunctive relief with respect to the Settlement Class as a whole. "Rule 23(b)(2) operates under the presumption that the interests of the class members are cohesive and homogeneous such that the case will not depend on adjudication of facts particular to any subset of the class nor require a remedy that differentiates materially among class members." *Lemon v. Int'l Union of Operating Eng'rs, Local No. 139*, 216 F.3d 577, 580 (7th Cir. 2000). Stellar's practice of calling the cellular telephones of debtors in violation of the TCPA, without having obtained consent from the called parties or from an original creditor who obtained

those numbers from the called parties, or in refusing to honor revocation requests, impacts each Settlement Class Member, and all prospective relief inures to the benefit of the Settlement Class as a whole.

## I.     Scheduling a Final Approval Hearing Is Appropriate

The last step in the settlement approval process is a Final Approval Hearing at which the Court may hear all evidence and argument necessary to make its settlement evaluation.  Proponents of the settlement may explain the terms and conditions of the Settlement Agreement, and offer argument in support of final approval.  The Court will determine after the Final Approval Hearing whether the Settlement should be approved, and whether to enter a final order and judgment under Rule 23(e). Plaintiffs request that the Court set a date for a hearing on final approval at the Court's convenience, and schedule further settlement proceedings pursuant to the schedule set forth below:

| ACTION | DATE |
|---|---|
| Preliminary Approval Order Entered | At the Court's Discretion |
| Notice Deadline | Within 30 days of Preliminary Approval Order |
| Class Counsel's Fee Motion Submitted | 30 days before Exclusion/Objection Deadline |
| Objection Deadline | 90 days after Notice Deadline |
| Deadline to Submit Claims | 90 days after Notice Deadline |
| Final Approval Brief and Response to Objections Due | At least 14 days prior to the Final Approval Hearing |
| Final Approval Hearing / Noting Date | No earlier than 30 days after Objection Deadline |
| Final Approval Order Entered | At the Court's Discretion |

## V.     CONCLUSION

The proposed class action settlement is fair, reasonable, and adequate.  Thus, it should be approved in all respects.

Respectfully submitted,

s/Cassandra P. Miller
Daniel A. Edelman
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER
  & GOODWIN, L.L.C.
20 S. Clark St, Suite 1500
Chicago, Illinois 60603


s/ Beth E. Terrell, *Pro Hac Vice Pending*
Beth E. Terrell, *Pro Hac Vice Pending*
TERRELL MARSHALL LAW GROUP PLLC
936 N. 34th Street, Suite 300
Seattle, Washington 98103

## <u>CERTIFICATE OF SERVICE</u>

I, Cassandra P. Miller, hereby certify that a true and accurate copy of the foregoing document was filed via the Court's CM/ECF system which sent notification via electronic mail to the following parties:

David M. Schultz
Email: dschultz@hinshawlaw.com

Benjamin Nicholas Hutnick
Email: bhutnick@bermanrabin.com

Clifford E. Yuknis
Email: ceyuknis@gmail.com

Katherine H. Oblak
Email: ktresley@hinshawlaw.com

<u>s/Cassandra P. Miller</u>
Cassandra P. Miller

24