# EXHIBIT 1

SIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT SUNDIN,<br>on behalf of himself and a class, | ) ) ) | |
| Plaintiff, | ) ) | 13-CV-1560 |
| vs. | ) ) ) | Magistrate Judge Sidney I. Schenkier |
| STELLAR RECOVERY, INC., | ) ) | |
| Defendant. | ) | |

**CLASS ACTION SETTLEMENT AGREEMENT**

This Settlement Agreement (the "Agreement" or "Settlement" or "Settlement Agreement") is entered into by Robert Sundin, Amanda Knapp-Ellis, and Robert Soriano, individually and on behalf of all others similarly situated ("Plaintiffs" or "Class Representatives"), with the assistance and approval of Class Counsel, on the one hand, and Stellar Recovery Inc. ("Defendant" or "Stellar") (collectively, "Parties" or "Settling Parties") with the assistance of its counsel of record, in the actions entitled *Robert Sundin v. Stellar Recovery, Inc.*, United States District Court for the Northern District of Illinois, Case No. 1:13-cv-01560, and *Amanda Knapp-Ellis, et al. v. Stellar Recovery, Inc.,* United States District Court for the Northern District of Illinois, Case No. 1:16-cv-02187, which was transferred from the Western District of Washington, Case No. 2:13-CV-01967-RSM (the "Actions" or "Class Actions"), as set forth below:

**RECITALS**

**WHEREAS**, Plaintiffs brought two Class Actions against Defendant, which are currently pending and unresolved between the Parties;

**WHEREAS**, in the Actions, Plaintiffs claim that Stellar violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA") by, without their consent, making calls to their cell phones using an Automatic Telephone Dialing System or leaving messages with an artificial or prerecorded voice;

**WHEREAS**, in the Actions, Plaintiffs seek an injunction restraining the practices complained of, statutory damages, treble damages, costs of suit, and such other or further relief as the Court were to deem proper;

**WHEREAS**, Defendant denies Plaintiffs' claims, denies any liability to Plaintiffs or the proposed Settlement Class, and denies any wrongdoing of any kind;

1

**WHEREAS**, Plaintiffs and Defendant agree that it is desirable that the Actions and the claims alleged therein be settled upon the terms and conditions set forth herein to avoid further expense and uncertain, burdensome and potentially protracted litigation, and to resolve all claims between the parties;

**WHEREAS**, the Settling Parties have engaged in extensive arms-length settlement negotiations and Class Counsel represent that they have otherwise conducted a thorough study and investigation of the law and the facts relating to the claims that have been or might have been asserted in the Actions and have concluded that, taking into account the benefits that Plaintiffs and the Class Members will receive as a result of this Settlement Agreement and the risks and delays of further litigation, this Settlement Agreement is fair, reasonable and adequate and in the best interests of Plaintiffs and the Class Members;

**WHEREAS**, in consideration of the foregoing and other good and valuable consideration, it is hereby stipulated and agreed by and between Plaintiffs and Defendant that the claims of Plaintiffs and the Class Members be and are hereby compromised and settled, subject to the approval of the Court, upon the terms and conditions set forth below.

## DEFINITIONS

As used in all parts of this Settlement Agreement, the following terms have the meanings specified below:

1.1 "Class Counsel" means Cassandra P. Miller and Edelman, Combs, Latturner and Goodwin, LLC, Beth E. Terrell, Adrienne D. McEntee and Terrell Marshall Law Group PLLC, SaraEllen Hutchison and Law Office of SaraEllen Hutchison PLLC, Thomas Jarrard and Law Office of Thomas G. Jarrard, and Robert W. Mitchell, Attorney at Law.

1.2 "Class Member" means a person who is a member of the Settlement Class.

1.3 "Class Notice" means the notice to be approved by the Court as set forth in paragraph 2.6 below and Exhibit A attached hereto.

1.4 "Class Period" means February 28, 2009 through the date of the entry of the Final Approval Order.

1.5 "Court" means the United States District Court for the Northern District of Illinois.

1.6 "Effective Date" means the date on which the Final Approval Order becomes Final.

1.7 "Fairness Hearing" means a hearing set by the Court for the purpose of: (i) determining the fairness, adequacy and reasonableness of the Settlement Agreement pursuant to class action procedures and requirements; and (ii) entering a Final Approval Order.

1.8    "Final" means the later of: (i) the date a Final Approval Order is entered by the Court if no objection(s) is (are) filed; or (ii) the date of expiration for the time for noticing a valid appeal from the Final Approval Order if an objection(s) is (are) filed and an appeal is not noticed; or (iii) the date of final affirmance or dismissal of the last pending appeal if an appeal is noticed.

1.9    "Final Approval Order" means an order to be entered by the Court entitled "Final Approval Order," substantially in the form attached hereto as Exhibit C.

1.10    "Defendant" means defendant Stellar Recovery, Inc., and each of its past, present, and future directors, officers, employees, partners, principals, agents, underwriters, insurers, co-insurers, re-insurers, shareholders, attorneys, and any related or affiliated company, including any parent, subsidiary, predecessor, or successor company, and all assigns, licensees, divisions, clients and joint ventures (in their capacities as such).

1.11    "Actions" mean the lawsuits styled *Sundin v. Stellar Recovery, Inc. et al*, currently pending in the Court as Case No.1:13-cv-01560, and *Amanda Knapp-Ellis, et al. v. Stellar Recovery, Inc.,* United States District Court for the Northern District of Illinois, Case No. 1:16-cv-02187, which was transferred from the Western District of Washington, Case No. 2:13-CV-01967-RSM.

1.12    "Objection Deadline" means the deadline set by the Court for Class Members to object to the Settlement Agreement.

1.13    "Settlement Agreement" means this settlement agreement and all of its attachments and exhibits, which the Settling Parties understand and agree to set forth all material terms and conditions of the settlement between them and which is subject to Court approval.

1.14    "Settlement Class" means the class the Parties have consented to for purposes of settlement only, as described in paragraph 2.1 below.

1.15    "Settling Parties" or "Parties" means Plaintiffs and Defendant and their respective representatives and attorneys.

## TERMS AND CONDITIONS

2.1    **The Settlement Class**. The Settling Parties stipulate to certification of the following class for settlement purposes only pursuant to Fed. R. Civ. P. 23(b)(2):

> (a) all persons with United States cellular numbers, (b) who on or after February 28, 2009 (c) received automated calls from Defendant (d) where Defendant did not have prior express consent to make the automated calls (for example, where the number was obtained through skip tracing or captured by Defendant's equipment from an inbound call, or Defendant called the number after consent had been revoked).

3

2.2     **Injunctive Relief to the Class**.

A.      <u>Defendant's Representations</u>.  Defendant shall provide a declaration under penalty of perjury in support of preliminary approval that, among other items, establishes that Defendant has insufficient resources to grant effective relief to the putative Class Members.  The Parties' request for certification of a settlement class under only Fed. R. Civ. P. 23(b)(2) is contingent upon this representation.

B.      <u>Injunctive Relief Parameters.</u>  The Parties agree that for a period of the two years following the effective date, Stellar shall comply with the following:

    1.     Stellar shall notate consent in its written account documentation if and when said consent is obtained, and if and when consent is revoked.

    2.     Stellar shall strictly and routinely search and scrub every number provided to it by the original creditor to determine if it is a cellular telephone number.  If the results of a scrub indicate that a number is assigned to a cellular telephone, Stellar shall notate that said number is assigned to a cellular telephone in the written account documentation for the corresponding account.

    3.     If Stellar obtains any new telephone numbers for debtors from any source (relatives, public resources, skip tracing, etc.), then those numbers must be scrubbed utilizing reasonable procedures to determine which phone numbers are cellular telephone numbers.

    4.     For each number identified as a cellular telephone number or for which Stellar does or may know to be a cellular telephone number, said number cannot be called utilizing Stellar's auto-dialer unless Stellar has written documentation of prior express consent as contemplated by the TCPA.

    5.     For each cellular telephone number wherein Stellar does not have concrete evidence of consent, Stellar must use human intervention to dial the number until and unless Stellar is able to obtain prior express consent.

    6.     Prior express consent must be clear and must be formally in writing or verifiable by recorded telephone call via the debtor in question.

    7.     Prior express consent must be clearly and conspicuously noted in the computer system utilized by Stellar.  Stellar must also clearly and conspicuously note the revocation of consent in its computer system.

B.      <u>Injunction Oversight and Reporting.</u>  Stellar shall make a bi-annual report to Class Counsel outlining its compliance with the TCPA injunction and any issues that may have arisen.

4

Stellar agrees to submit copies of any putative individual or class action lawsuits filed against it and asserting a claim pursuant to the TCPA during the reporting period to Class Counsel beginning 6 months from the date that this agreement is signed and every 6 months thereafter until expiration of the injunction. Reports from Stellar are due on September 28, 2016, March 28, 2017, September 28, 2017 and March 28, 2018.

      C.    <u>Injunction Training and Supervision.</u>  Stellar must incorporate into its employee handbooks sufficient training regarding the TCPA. Stellar must devote classes and training for new and current debt collection employees as well as supervisory staff concerning: the TCPA, the meaning and how to obtain prior express consent as defined by the TCPA, the effect and statutory damages permitted under the TCPA, and prudent procedures for use and application of phone numbers obtained by debt collection employees during normal collection efforts. Stellar shall create a new TCPA compliance manager (who may be a current employee of Stellar and the new compliance manager position need not be dedicated exclusively to that position) who shall review the training information, work to train staff, and oversee debt collection practices and their TCPA compliance or lack thereof.

      D.    <u>Cost of Injunctive Relief</u>. The foregoing requirements have required, and will require, Stellar to make significant changes to its business practices. Stellar has determined that the cost to Stellar to make these changes is $1,000,000.00, at a minimum. The changes to Stellar's business practices include, but are not limited to:

    1.    Ongoing comprehensive training specific to the TCPA for all employees, including a review of the full text of the statute, its prohibitions and penalties, Stellar's TCPA compliance initiatives, and any significant legal developments that may affect Stellar's TCPA compliance initiatives.

    2.    Classroom and hands-on TCPA training for new employees encompasses approximately 15 hours, and existing employees are provided with approximately 10 TCPA training hours per year. The cost of providing this training is approximately $15,000.00 per year.

    3.    All telephone numbers received by Stellar, from any source, for use in contacting consumers, are now "scrubbed" by a specialized vendor called IDI (Interactive Data Inc.) immediately upon receipt, on a daily basis, at a cost of $1,200.00 per month to identify those telephone numbers which are assigned to cellular phones.

    4.    All telephone numbers identified as being assigned to cellular phones are now immediately notated as such within Stellar's Latitude collection software, and firm restrictions are set within said software so that those telephone numbers shall not be dialed by an automated system under the TCPA, unless express permission to do so is obtained from the individual to whom a telephone number is assigned.

5.      Upon establishing telephone contact with any individual whose number has been identified as a cellular telephone, Stellar employees must inquire as to whether the number is a cellular telephone or land-line, and whether Stellar has permission to contact the individual at that number. Stellar employees must then notate the individual's response in the Latitude software.

6.      The scrubbing initiative, in conjunction with Stellar's implementation of additional TCPA compliance and training measures, will allow Stellar to refrain from leaving automated messages on any telephone number identified as being assigned to a cellular telephone, unless express permission to do so has been obtained from the individual to whom said telephone number is assigned.

7.      Stellar will require all employees to conspicuously notate consent to dial all telephone numbers in its written account documentation if and when said consent is obtained, and will likewise require all Stellar employees to notate any revocation of consent to dial any telephone number in its written account documentation if and when said revocation is made.

8.      Stellar shall store all written account documentation and recorded telephone calls indefinitely, and for at least four (4) years. Stellar shall also store all recordings, at a current cost of $15,000.00 a month, which cost increases each month due to the volume being stored and will eventually reach a cost of $27,000.00 per month.

9.      Stellar shall use these recordings to perform improved ongoing quality assurance and compliance evaluations with its employees, to ensure that the employees comply with Stellar's stricter approach to TCPA compliance generally, and consent or revocation thereof specifically.

10.     Stellar shall routinely and randomly screen recorded calls to ensure that its employees are adhering to its stricter TCPA compliance measures, and quality assurance training representatives shall review recorded calls with Stellar employees one-on-one, providing them with an opportunity to address TCPA compliance failures.

11.     Stellar shall demonstrate increased Quality Assurance ("QA") implementation measures, especially as concerns call reviews. QA reviews of calls must be performed daily via live monitoring and recorded call playback, with training and counseling performed on the spot with each agent when areas for improvement are identified. Two or more written QA assessments shall be completed monthly for each collector.

12.     Beginning in September 2015, Stellar hired an additional QA employee whose primary responsibility is to perform call monitoring and call review, at an annual cost of $45,000.00 per year.

13.     Beginning in May 2016, Stellar's QA department shall also hold monthly compliance meetings with all collectors, at which selected calls will be played and discussed in a group setting for further training and development.

2.3    **Payment To Class Representatives**.  Each of the three Class Representatives—Robert Sundin, Amanda Knapp-Ellis, and Robert Soriano—shall receive $10,000 for his or her individual claim and as an incentive award for his or her services as Class Representative.

2.4    **Payment to Class Counsel**.  Class Counsel shall move the Court for an award of reasonable attorneys' fees and costs in the amount of $105,000.  This payment is subject to Court approval.

2.5    **Payment of Notice Costs**.  Defendant shall be responsible for the cost of sending notice to the Class Members as set forth in paragraph 2.7 below.  This cost is separate and apart from the payment to Class Counsel described in Paragraph 2.4.

2.6    **Release by Class Representatives**. Except for the obligations created by this Settlement Agreement, upon the Effective Date, Class Representatives remise, release and forever discharge the Defendant from any and all claims, charges, complaints, demands, judgments, causes of action, rights of contribution and indemnification, attorneys' fees, costs and liabilities raised in the Lawsuit.  Specifically, the "Released Claims" shall include any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, or foreign law right of action or of any other type or form (whether in contract, tort, or otherwise, including statutory, common law, property, and equitable claims), which Plaintiff has, arising out of, based upon, or in any way relating to Defendant allegedly calling, without prior express consent, his or her paging service, cellular telephone service, mobile radio service, radio common carrier service, or other service for which he or she was charged for the call, through the use of any automatic telephone dialing system (including an automated dialing machine, dialer, and auto-dialer) or artificial or prerecorded voice, including, but not limited to, any claims under the TCPA, or any similar state or federal law.  Specifically excluded from this Release are any Claims, including statutory and actual damage claims, of the Class Members.

2.7    **Class Notice**.  If, by entering the Preliminary Approval Order, the Court provides authorization to provide the Class Notice to Class Members, the Settling Parties will cause Class Notice to be given via electronic mail within twenty-eight (28) days after the Preliminary Approval Date in the form and substance set forth in Exhibit A to legal aid societies and States' Attorneys' General for dissemination to their clientele.

2.8 **Right to Object**. Any Class Member, except Plaintiffs, may object to the terms of this Settlement Agreement in writing, as detailed in the Class Notice and within the time and in the manner provided by Court order. Any Class member who exercises his or her right to object to this Settlement Agreement will be responsible for his or her own attorneys' fees and costs. Class Counsel and attorneys of record for Defendant must be served with copies of any objections, postmarked no later than the Objection Deadline. The Class Notices shall advise Class members of this option. Any objections must be in writing and timely submitted or else they are waived.

2.9 **Participation**. Any Class Member may seek to participate in the Actions. Any Class member who exercises his or her right to participate in the Actions will be responsible for his or her own attorneys' fees and costs.

2.10 **Preliminary Approval Order**. As soon as practicable after execution of this Settlement Agreement, Plaintiffs and Defendant shall jointly request the following:

A. An Order entering a stipulation to the filing of an Amended Complaint that combines the allegations in the Actions;

B. An order from the Court preliminarily approving this Settlement Agreement;

C. An order from the Court of conditional certification for purposes of settlement the Settlement Class;

D. An order from the Court scheduling a hearing for final approval of this Settlement Agreement; and

E. An order from the Court approving the form and manner of Class Notice as set forth in paragraph 2.7 herein and finds that such notice satisfies the requirements of due process pursuant to the Code of Civil Procedure, the United States Constitution and any other applicable law and finds that no further notice to the Settlement Class is required.

The Settling Parties agree to request the form of Preliminary Approval Order attached hereto as Exhibit B. The fact that the Court may require changes in the Preliminary Approval Order will not invalidate this Settlement Agreement if the changes do not materially modify this Settlement Agreement.

2.11 **Final Approval Order**. At the conclusion of, or as soon as practicable after, the close of the Fairness Hearing, Plaintiffs and Defendant shall jointly request that the Court enter a Final Approval Order:

A. Approving the terms of this Settlement Agreement as fair, reasonable and adequate;

B. Providing for the implementation of its terms and provisions;

        C.      Certifying for purposes of settlement the Settlement Class; and

        D.      Finding that the Class Notice given to the Settlement Class satisfies the requirements of due process pursuant to the Code of Civil Procedure, the United States Constitution and any other applicable law;

The Settling Parties agree to request jointly the form of Final Approval Order, attached hereto as Exhibit C. The fact that the Court may require changes in the Final Approval Order will not invalidate this Settlement Agreement if the changes do not materially modify this Settlement Agreement.

2.12 **Release of Attorney's Lien**. In consideration of this Settlement Agreement, Class Counsel hereby waives, discharges, and forever releases Defendant from any and all claims for attorneys' fees, by lien or otherwise, for legal services rendered by Class Counsel in connection with the Actions, other than as set forth in paragraph 2.4; provided, however, that this release is conditioned upon Final Approval of this Settlement Agreement by the Court and full performance by the Defendant of its obligations under this Settlement Agreement.

2.13 **No Admission of Liability**. Whether or not this Settlement Agreement is consummated, this Settlement Agreement and all proceedings had in connection herewith shall in no event be construed as, or be deemed to be, evidence of an admission or concession by Defendant of any liability or wrongdoing whatsoever.

2.14 **Best Efforts**. The Settling Parties and their respective counsel agree to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to use their best efforts to effect the consummation of this Settlement Agreement.

2.15 **Counterparts**. This Settlement Agreement may be signed in counterparts, in which case the various counterparts shall constitute one instrument for all purposes. The signature pages may be collected and annexed to one or more documents to form a complete counterpart. Photocopies, facsimiles or scanned copies of the signature pages of this Settlement Agreement may be treated as originals.

2.16 **Binding Agreement**. Each and every term of this Settlement Agreement shall be binding upon and inure to the benefit of Plaintiffs and each Class Member and each of their respective current and former heirs, executors, administrators, assigns, agents and attorneys, all of whom/which persons and entities are intended to be beneficiaries of this Settlement Agreement. Each and every term of this Settlement Agreement shall be binding upon and inure to the benefit of Defendant and each of its current and former officers, directors, managers, shareholders, employees, predecessors, successors, assigns, agents and attorneys. There are otherwise no third-party beneficiaries of this Settlement Agreement.

2.17 **Governing Law**. This Settlement Agreement (and any exhibits hereto) shall be considered to have been negotiated, executed and delivered, and to have been wholly performed,

in the State of Illinois, and the rights and obligations of the Settling Parties to this Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal substantive laws of the State of Illinois without giving effect to Illinois choice of law principles.

2.18 **Interpretation**. The Settling Parties acknowledge that they have had an equal opportunity to participate in the drafting of this Settlement Agreement and that the Settling Parties and their respective counsel reviewed and negotiated the terms and provisions of this Settlement Agreement and have contributed to its revisions. Therefore, in any dispute over the construction or interpretation of this Settlement Agreement, the Settling Parties agree and understand that the Settlement Agreement shall be construed fairly as to all Settling Parties and shall not be construed against any Settling Party on the basis of authorship. The Settling Parties further agree that in this Settlement Agreement the singular shall include the plural and vice versa where the content so requires.

2.19 **Entire Agreement**. This Settlement Agreement constitutes the entire agreement of the Settling Parties hereto as to the matters raised herein. The undersigned acknowledge that there are no communications or oral understandings contrary to, in addition to, or different from the terms of this Settlement Agreement and that all prior agreements or understandings within the scope of the subject matter of this Settlement Agreement are, upon execution of this Settlement Agreement, superseded and merged into this Settlement Agreement and shall have no effect. This Settlement Agreement may not be amended or modified in any respect whatsoever, except by a writing duly executed by the Settling Parties and their respective counsel.

2.20 **Authority**. The persons signing this Settlement Agreement hereby represent and warrant that they have read this Settlement Agreement, that they know and understand its terms, that they have consulted with counsel with respect hereto, that they have signed this Settlement Agreement freely, and that they intend that they and/or or any person or entity on whose behalf they are signing this Settlement Agreement will be fully bound by all the terms and provisions of this Settlement Agreement. Such persons further represent and warrant that they are competent to sign this Settlement Agreement and that, as necessary, all corporate or other legal formalities have been followed such that they have full authority to execute this Settlement Agreement on behalf of the person or entity for whom or for which they are signing this Settlement Agreement in a representative capacity.

2.21 **Headings**. The headings of the several sections and paragraphs hereof are for convenience only and do not define or limit the contents of such sections or paragraphs.

2.22 **Severability**. In case any one or more of the provisions contained in this Settlement Agreement shall be determined to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected and/or impaired thereby.

2.23 **Attorney's Fees**. In the event that any action between these Parties is necessary to enforce the terms and conditions of this Release, the prevailing party shall be entitled to the recovery of reasonable attorney's fees and costs from the losing party.

10

**IN WITNESS WHEREOF**, the Settling Parties hereto, have so agreed on the dates noted below.

Plaintiffs and Class Representatives:

By: _____       _____
      Robert Sundin                                              Date

By: *Amanda Ellis*                                       *3/20/2016*
      Amanda Knapp-Ellis                                   Date

By: _____       _____
      Robert Soriano                                            Date

Counsel for Plaintiffs and Class Representatives:

EDELMAN, COMBS, LATTURNER
  AND GOODWIN, LLC

By: _____       _____
      Cassandra P. Miller                                     Date

TERRELL MARSHALL LAW GROUP PLLC

By: _____       _____
      Beth E. Terrell, WSBA #26759                      Date
      Adrienne D. McEntee, WSBA #34061

LAW OFFICE OF SARAELLEN HUTCHISON PLLC

By: *SaraEllen H*                                         March 28, 2016
      SaraEllen Hutchison, WSBA #36137           Date

LAW OFFICE OF THOMAS G. JARRARD

By: _____       _____
      Thomas Jarrard, WSBA #39774                   Date

By: _____       _____
      Robert W. Mitchell, WSBA #37444            Date

**IN WITNESS WHEREOF**, the Settling Parties hereto, have so agreed on the dates noted below.

Plaintiffs and Class Representatives:

By: _____       _____
     Robert Sundin                                 Date


By: _____       _____
     Amanda Knapp-Ellis                       Date


By: *Robert Soriano*                           *March 28, 2016*
     Robert Soriano                              Date

Counsel for Plaintiffs and Class Representatives:

EDELMAN, COMBS, LATTURNER
  AND GOODWIN, LLC

By: _____       _____
     Cassandra P. Miller                        Date


TERRELL MARSHALL LAW GROUP, PLLC

By: _____       3/29/2016
     Beth E. Terrell, WSBA #26759         Date
     Adrienne D. McEntee, WSBA #34061


LAW OFFICE OF SARAELLEN HUTCHINSON PLLC

By: _____       _____
     SaraEllen Hutchison, WSBA #36137   Date


LAW OFFICE OF THOMAS G. JARRARD

By: _____       _____
     Thomas Jarrard, WSBA #39774        Date


By: _____       _____
     Robert W. Mitchell, WSBA #37444    Date

11

Defendant:

STELLAR RECOVERY INC.

By: _____

3/28/16
_____
Date

Counsel for Defendant:

SIMBURG KETTER SHEPPARD & PURDY, LLP

By: _____
    Andrew D. Shafer, WSBA #9405

_____
Date

BERMAN RABIN, P.A.

By: _____
    Benjamin N. Hutnick

3-28-16
_____
Date

12

# **EXHIBIT A**

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

*A Federal court authorized this notice. This is not a solicitation from a lawyer.*

# IF YOU OR SOMEONE YOU KNOW RECEIVED A
# COLLECTION CALL ON A CELL PHONE FROM
# STELLAR RECOVERY, INC
## PLEASE READ THIS NOTICE

- This is to inform you of the settlement of a class action lawsuit against Stellar Recovery, Inc. ("Stellar") in the United States District Court for the Northern District of Illinois, Case No. 1:13-cv-01560.

- In the lawsuit, plaintiffs allege that, without their consent, or after they revoked consent, Stellar made collection calls to their cell phones using an automated telephone dialing system or an artificial or prerecorded voice. Plaintiffs allege these acts violate the Telephone Consumer Protection Act ("TCPA") and the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA").

- Plaintiffs brought the case on behalf of themselves and everyone else who received unauthorized cell phone calls from Stellar. You may be a member of the class and entitled to the benefits of the settlement.

- If the settlement is approved by the Court:

  o Stellar will change its practices to ensure that in the future it does not call anyone's cell phone without his or her prior consent, or after consent has been revoked.

  o If you are a class member, you retain your right to bring a lawsuit against Stellar, individually or on behalf of a class of individuals, for between $500 and 1,500 per illegal call.

- The Court is holding a hearing to consider the fairness of the settlement on _____, __, 2016 at ___a.m./p.m. If you would like to object to any part of the settlement, including the fees awarded the attorneys, you can obtain more information about the settlement and how to file an objection at www. . . . or by calling xxx-xxx-xxxx. You may also contact Class Counsel, below, to find out more information.

Edelman, Combs, Latturner & Goodwin, LLC
(28016)
20 South Clark St., Suite 1500
Chicago, IL 60603
(312) 739-4200

Terrell Marshall Law Group PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103

# **<u>EXHIBIT B</u>**

Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT SUNDIN, | ) | |
| on behalf of himself and a class, | ) | |
| | ) | |
| Plaintiff, | ) | 13-CV-1560 |
| | ) | |
| vs. | ) | |
| | ) | Magistrate Judge Sidney I. Schenkier |
| STELLAR RECOVERY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## [PROPOSED] PRELIMINARY APPROVAL ORDER

This matter coming before the Court on the joint request of the parties for preliminary approval of a Class Action Settlement Agreement, and based upon the papers submitted to the Court and all of the proceedings had in this matter to date, IT IS HEREBY ORDERED:

1. Solely for purposes of settlement, the following Settlement Class is provisionally certified pursuant to Fed. R. Civ. P. 23(b)(2):

> (a) all persons with United States cellular numbers, (b) who on or after February 28, 2009 (c) received automated calls from Defendant (d) where Defendant did not have prior express consent to make the automated calls (for example, where the number was obtained through skip tracing or captured by Defendant's equipment from an inbound call, or Defendant called the number after consent had been revoked).

2. Based on the parties' stipulations, and for settlement purposes only:

> (A) The class as defined is sufficiently numerous such that joinder is impracticable;
>
> (B) Common questions of law and fact predominate over any questions affecting only individual Class Members, and include whether or not Defendant

violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* by, without consent, making calls to the cell phones of plaintiffs and class members using an Automatic Telephone Dialing System or leaving messages with an artificial or prerecorded voice;

(C)     The claims of Plaintiffs Robert Sundin, Amanda Knapp-Ellis, and Robert Soriano are typical of the Class Members' claims;

(D)     Plaintiffs Robert Sundin, Amanda Knapp-Ellis, and Robert Soriano are appropriate and adequate representatives for the Class and their attorneys, Cassandra P. Miller and Edelman, Combs, Latturner and Goodwin, LLC, Beth E. Terrell, Adrienne D. McEntee and Terrell Marshall Law Group PLLC, SaraEllen Hutchison and Law Office of SaraEllen Hutchison PLLC, Thomas Jarrard and Law Office of Thomas G. Jarrard, and Robert W. Mitchell, Attorney at Law, are hereby appointed as Class Counsel; and

(E)     Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

3.     The Court finds that the proposed settlement is within the range of fairness and reasonableness and grants preliminary approval to it. In the event that the proposed settlement is not finally approved for any reason, Defendant shall, pursuant to the Settlement Agreement, retain its right to contest certification of the Class.

4.     The Court approves the proposed form of notice to the Class, and directs that notice be implemented in accordance with the Settlement Agreement. Class Counsel shall file an affidavit

with the Court, at least 5 business days prior to the Final Approval Hearing, attesting that notice has been so given.

5.      The Court finds that the notice proposed in paragraph 2.7 of the Settlement Agreement is the only notice to the Class Members that is required and further finds that such notice satisfies the requirements of due process and Fed. R. Civ. P. 23.

6.      Class Members shall have ninety (90) days from the date of this Order to object to the proposed Settlement Agreement.

7.      Any Class Member who objects to the settlement contemplated by the Settlement Agreement shall have a right to appear and be heard at the Final Approval Hearing provided that such Class Member files with the Court and delivers to Class Counsel and Defendant's counsel a written notice of objection together with a statement of reasons for the objection, postmarked no later than ninety (90) days from the date of this Order.  Class Counsel and Defendant's counsel may, but need not, respond to the objections, if any, by means of a memorandum of law no later than five (5) days prior to the Final Approval Hearing.

8.      A Final Approval Hearing on the fairness and reasonableness of the Settlement Agreement will be held before this Court on _____ at _____a.m./p.m.

SO ORDERED this _____ day of _____, 2016.


                                        _____
                                        Honorable Sidney I. Schenkier
                                        United States Magistrate

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT SUNDIN, | ) | |
| on behalf of himself and a class, | ) | |
| | ) | 13-CV-1560 |
| Plaintiff, | ) | |
| vs. | ) | Magistrate Judge Sidney I. Schenkier |
| | ) | |
| STELLAR RECOVERY, INC., | ) | |
| | ) | |

**[PROPOSED] FINAL APPROVAL ORDER**

The Court having held a Final Approval Hearing on _____, and having considered the papers submitted to the Court and proceedings to date, and having considered all matters submitted to it at the Final Approval Hearing and otherwise, and finding no just reason for delay in entry of this Final Judgment and good cause appearing therefore,

It is hereby ORDERED, ADJUDGED AND DECREED as follows:

1.    The Settlement Agreement dated _____, including its exhibits (the "Settlement Agreement"), and the definition of words and terms contained therein are incorporated by reference in this Order. The terms of this Court's Preliminary Approval Order are also incorporated by reference in this Order.

2.    This Court has jurisdiction over the subject matter of the Actions and over the Parties, including all members of the following Settlement Class certified for settlement purposes in this Court's Preliminary Approval Order:

> SETTLEMENT CLASS:  (a) all persons with United States cellular numbers (b) who on or after February 28, 2009 (c) received automated calls from Defendant (d) where Defendant did not have prior express consent to make the automated calls (for example, where the number was obtained through skip tracing or captured by Defendant's equipment from an inbound call, or Defendant called the number after consent had been revoked).

3.    The Settlement Class is certified because:

> (A)    The class as defined is sufficiently numerous such that joinder is
>
> impracticable;

(B)     Common questions of law and fact predominate over any questions affecting only individual Class Members, and include whether or not Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA");

(C)     The claims of Plaintiffs Robert Sundin, Amanda Knapp-Ellis, and Robert Soriano are typical of the Class Members' claims;

(D)     Plaintiffs Robert Sundin, Amanda Knapp-Ellis, and Robert Soriano are appropriate and adequate representatives for the Class and their attorneys, Cassandra P. Miller and Edelman, Combs, Latturner and Goodwin, LLC, Beth E. Terrell, Adrienne D. McEntee and Terrell Marshall Law Group PLLC, SaraEllen Hutchison and Law Office of SaraEllen Hutchison PLLC, Thomas Jarrard and Law Office of Thomas G. Jarrard, and Robert W. Mitchell, Attorney at Law, are qualified to serve as counsel for Plaintiffs and the Settlement Class;

(E)     Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; and

(F)     This action is manageable as a class action.

4.     Notice was given to the Class pursuant to the Preliminary Approval Order and the Settlement Agreement;

5.     The dissemination of Notice, as provided for in the Preliminary Approval Order and the Settlement Agreement, constituted the best practicable notice under the circumstances to all Class Members and fully met the requirements of Fed. R. Civ. P. 23, any and all substantive and procedural due process rights guaranteed by the United States Constitution and any other applicable law;

6.     No members of the Settlement Class objected to the Settlement Agreement; and

2

7.      The Settlement Agreement is the product of arm's length settlement negotiations between Plaintiffs, Class Counsel and Defendant.  The Settlement Agreement is fair, reasonable and adequate.

**THEREFORE, IT IS HEREBY ORDERED:**

A.      That the Settlement Agreement is finally approved and shall be implemented pursuant to its terms;

D.      That the Court hereby dismisses with prejudice all claims asserted by the Plaintiffs against Defendant and dismisses without prejudice, the claims of the Class Members;

E.      That this Court awards to Class Counsel their attorneys' fees and costs in the amount of $105,000, which this Court finds to be fair and reasonable in light of the time, expense, and complexity of this litigation;

F.      That this Court approves payment of $10,000 to each Plaintiff for his or her damages and services to the Settlement Class;

G.      That this Court reserves exclusive and continuing jurisdiction and venue with respect to the consummation, implementation, enforcement, construction, interpretation, performance and administration of the Settlement Agreement;

H.      That except as otherwise provided in the Settlement Agreement or herein, the parties are to bear their own attorneys' fees and costs;

I.      That the absent Class members retain their right to bring lawsuits for damages against Defendant for violations of the TCPA; and

J.      That Defendant is ordered to comply with the following injunctive relief, as described in the Settlement Agreement:

1.      Stellar shall notate consent in its written account documentation if and when said consent is obtained, and if and when consent is revoked.

2.      Stellar shall strictly and routinely search and scrub every number provided to it by the original creditor to determine if it is a cellular telephone number.  If the results of a scrub indicate that a number is assigned to a cellular telephone, Stellar shall

3

notate that said number is assigned to a cellular telephone in the written account documentation for the corresponding account.

3.      If Stellar obtains any new telephone numbers for debtors from any source (relatives, public resources, skip tracing, etc.), then those numbers must be scrubbed utilizing reasonable procedures to determine which phone numbers are cellular telephone numbers.

4.      For each number identified as a cellular telephone number or for which Stellar does or may know to be a cellular telephone number, said number cannot be called utilizing Stellar's auto-dialer unless Stellar has written documentation of prior express consent as contemplated by the TCPA.

5.      For each cellular telephone number wherein Stellar does not have concrete evidence of consent, Stellar must use human intervention to dial the number until and unless Stellar is able to obtain prior express consent.

6.      Prior express consent must be clear and must be formally in writing or verifiable by recorded telephone call via the debtor in question.

7.      Prior express consent must be clearly and conspicuously noted in the computer system utilized by Stellar.  Stellar must also clearly and conspicuously note the revocation of consent in its computer system.

SO ORDERED this _____ day of _____, 2016.

_____
Honorable Sidney I. Schenkier
United States Magistrate

4

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT SUNDIN, | ) | |
| on behalf of himself and a class, | ) | |
| | ) | |
| Plaintiff, | ) | 13-CV-1560 |
| | ) | |
| vs. | ) | |
| | ) | Magistrate Judge Sidney I. Schenkier |
| STELLAR RECOVERY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF CASSANDRA P. MILLER

I, Cassandra P. Miller, state under penalty of perjury, as provided for by 28 U.S.C. § 1746, that the following statements are true:

1.      I am a member of Edelman, Combs, Latturner & Goodwin, LLC ("ECLG") and have had the primary day-to-day responsibility for the prosecution of this case against Stellar Recovery, Inc. ("Stellar") for our firm. I am a member of the Illinois bar and admitted to practice in the following courts: The United States District Courts for the Northern and Central Districts of Illinois; the United States District Courts for the Northern and Southern District of Indiana.

2.      ECLG filed suit against Stellar on behalf of Robert Sundin on February 28, 2013 in the United States District Court for the Northern District of Illinois. The *Amanda Knapp-Ellis, et al. v. Stellar Recovery, Inc.,* United States District Court for the Western District of Washington, Case No. 2:13-CV-01967-RSM case was filed on October 30, 2013 and was recently transferred and reassigned as related to the *Sundin* case. The two cases were prosecuted separately by different law firms, but the parties coordinated discovery and settlement efforts and

ultimately resolved both cases on a global basis. A motion for leave to file a consolidated complaint has been filed in this action covering both the *Sundin* and *Knapp-Ellis* claims.

3.      Before the *Sundin* and *Knapp-Ellis* cases were consolidated, the parties took both fact and class related discovery. The parties issued and answered written discovery. The plaintiffs took the deposition of the President of Stellar, the Chief Compliance Officer of Stellar, and the Dialer Manager of Stellar. Additionally, the plaintiffs took the deposition of the Executive Vice President of Operations and Chief Financial Officer of LiveVox, the dialing system Stellar currently uses. Stellar took the deposition of Plaintiff Sundin.

4.      Plaintiff's retained an expert to analyze Stellar's calling data. Plaintiffs' expert determined that in six months, Stellar placed approximately 162 million calls, of which 73 million were calls to cell phones numbers and that there were 5 million unique cell phone numbers. Based on these figures, Stellar calls approximately 10 million unique cell phone numbers each year or 45 million unique cell phone numbers during the class period.

5.      Following the call data analysis, the parties, including the *Knapp-Ellis* case, requested a settlement conference with the Court. On May 14, 2015, the parties participated in a settlement conferences before this Court. The parties reviewed Stellar's financial information as well as their Insurance policies. The parties determined that Stellar had insufficient financial ability to provide financial relief to the classes alleged. The parties further determined that Stellar had insufficient financial ability to support even a very narrowed class definition. Stellar's insurance company for the time period alleged denied any coverage for the claims.

6.      During the settlement conference, the parties, with the help of this Court, discussed several ways to provide relief to the class given Stellar's net worth. The parties, with the help of this Court, determined that the class would benefit from injunctive relief because it

would require Stellar to make significant changes to its autodialing practices. Following the settlement conference, the parties participated in an additional phone conference with this Court, and the parties continued their efforts to try and resolve the claims between the parties.

7.      In August 2015, immediately prior to another scheduled settlement conference with this Court, the parties reached an agreement in principal.

8.      Since August 2015, I, along with my co-counsel, Adrienne McEntee, have worked rigorously with Stellar to prepare a plan for Stellar to enforce in using its dialing systems. At all times the Parties' settlement negotiations were highly adversarial, non-collusive and at arm's-length.

9.      Because of the size of the class, direct notice is impractical. Notice will be sent by electronic mail to legal aid societies, the attorneys general of all fifty states, and other organizations that represent consumers. I believe that this form of notice will be more effective than, say, a notice published in USA Today, a form of notice which is typical in many class action settlements when direct notice is impracticable.


Date: March 28, 2016                                        /s/ Cassandra P. Miller
                                                                    Cassandra P. Miller

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT SUNDIN, et al.,

               Plaintiffs,

    v.

STELLAR RECOVERY, INC., et al.,

               Defendants.

NO. 1:13-cv-01560

Magistrate Judge Sidney I. Schenkier

## DECLARATION OF BETH E. TERRELL IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

I, Beth E. Terrell, declare as follows:

1.      I am a member of the law firm of Terrell Marshall Law Group PLLC ("TMLG"), counsel of record for Plaintiffs in this matter. I am admitted to practice before this Court and am a member in good standing of the bars of the states of Washington and California. I respectfully submit this declaration in support of Plaintiffs' motion for preliminary approval of the settlement of the above-captioned class action.

2.      TMLG is a law firm in Seattle, Washington, that focuses on complex civil and commercial litigation with an emphasis on consumer protection, product defect, employment, wage and hour, real estate, and personal injury matters. The attorneys of TMLG have extensive experience in class actions, collective actions, and other complex matters. They have been appointed lead or co-lead class counsel in numerous cases at both the state and federal level. They have prosecuted a variety of multi-million-dollar consumer fraud, wage and hour, securities fraud, and product defect class actions. The defendants in these cases have included companies such as Wal-Mart, Microsoft, Best Buy, Toyota, Honda, Sallie Mae, Comcast, ABM Industries,

Inc., AT&T, T-Mobile USA, Weyerhaeuser, Behr Products, American Cemwood, Bank of America, Discover Financial Services, Capital One, and HSBC.

3.      I am the lead attorney from TMLG in the instant litigation.  A founding member of TMLG, I concentrate my practice in complex litigation, including the prosecution of consumer, defective product, and wage and hour class actions.  I have served as co-lead counsel on numerous multi-state and nationwide class actions.  I also handle a variety of employment issues including employment discrimination, restrictive covenant litigation, and pre-litigation counseling and advice.

4.      I received a B.A., magna cum laude, from Gonzaga University in 1990.  In 1995, I received my J.D. from the University of California, Davis School of Law, Order of the Coif. Prior to forming TMLG in May 2008, I was a member of Tousley Brain Stephens PLLC.  I am a frequent speaker at legal conferences on a wide variety of topics including consumer class actions, employment litigation, and electronic discovery, and I have been awarded an "AV" rating in Martindale Hubble by my peers.

5.      I am actively involved in several professional organizations and activities.  For example, I am the current Chair of the Consumer Protection Section for the Washington State Association of Justice.  I am the current Chair of the Washington Employment Lawyers Association and a member of the Public Justice Foundation's Board of Directors.  I serve on the Foundation's Development, Case Evaluation, Membership, and Class Action Preservation Committees.

6.      I have been repeatedly named to the annual Washington Super Lawyers list (2005, 2010, 2011, 2012, 2013, 2014, and 2015) by Washington Law & Politics Magazine. I was also named to its Top 100 Washington Super Lawyers list (2014 and 2015) and its Top 50 Women Super Lawyers list (2012, 2013, 2014, and 2015).

7.      Mary B. Reiten is a member of TMLG.  Ms. Reiten received her B.A. with high honors from the University of California, Berkeley in 1991 and graduated from the University of California, Hastings College of Law in 1998.   Prior to joining TMLG, Ms. Reiten was a member

of Tousley Brain Stephens PLLC. Ms. Reiten was also an associate at Lieff Cabraser Heiman & Bernstein for one year and clerked for the superior courts of Sitka, Alaska and San Francisco, California. Ms. Reiten has represented plaintiffs in several consumer class actions, including *Spafford v. EchoStar*; *Hartman, et al. v. Comcast*; *Richison v. American Cemwood Corp.*; *Zwicker et al. v. General Motors Corporation*; and *Trimble v. Holmes Harbor Sewer District, et al.* In 2004, Ms. Reiten was named a Washington "Rising Star" by Washington Law & Politics magazine.

8. Adrienne D. McEntee has been a member of TMLG since September 2014. Ms. McEntee graduated from the University of Washington School of Law in 2003, where she was a member of the Pacific Rim Law and Policy Journal and Moot Court Honor Board. Prior to joining TMLG, Ms. McEntee was a member of Tousley Brain Stephens PLLC, where she practiced for five years. Before entering private practice, Ms. McEntee worked with the King County Prosecuting Attorney's Office, where she prosecuted a broad range of crimes. Ms. McEntee has tried approximately fifty cases and has briefed, argued, and won cases before the Washington State Court of Appeals. Since her admission to the bar, Ms. McEntee has been an active member of the Washington State Bar Association and a member of the Washington Women Lawyers' Judicial Evaluation Committee.

9. TMLG has actively and successfully litigated class action lawsuits under the Telephone Consumer Protection Act ("TCPA"). TMLG has taken the lead in some of the largest nationwide class actions filed under the TCPA, including those filed against large financial institutions such as Sallie Mae, Bank of America, Discover Financial Services, Capital One, and HSBC. I have been appointed co-lead counsel in two of the largest MDLs involving TCPA claims, *In re Capital One Telephone Consumer Protection Act Litigation*, 1:12-cv-10064 (N.D. Illinois), and *In re Monitronics International, Inc. Telephone Consumer Protection Act Litigation*, MDL No. 1:13-MD-2493 (N.D. W. Va.).

10. TMLG is litigating or has recently settled the following Telephone Consumer Protection class actions:

- *In re Capital One Telephone Consumer Protection Act Litigation*—Filed on behalf of consumers who received automated, prerecorded collection telephone calls on their cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* I served as court-appointed Interim Co-Lead Counsel; final approval of the $75,455,098.74 settlement was granted in February 2015.

- *Wilkins, et al. v. HSBC Bank Nevada, N.A., et al.*—Filed on behalf of individuals who alleged that HSBC made prerecorded calls using an automatic dialing system. The case settled on a class-wide basis in 2014 for $39,975,000, and final approval was granted in March 2015.

- *Rinky Dink, et al. v. Electronic Merchant Systems, et al.*—Filed on behalf of consumers who received automated, prerecorded solicitation telephone calls on their cellular telephones and Washington landlines without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, the Washington Automatic Dialing and Announcing Device statute, RCW 80.36.400, and the Washington Consumer Protection Act, RCW 19.86 *et seq.* The case settled on a class-wide basis in 2015; final approval is pending.

- *Ott, et al. v. Mortgage Investors Corporation*—Filed on behalf of consumers who received automated solicitation telephone calls on their cellular and residential telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* The case settled on a class-wide basis in 2015 for $7,483,600, and final approval was granted in January 2016.

- *Lushe, et al. v. Vergengo* – Filed on behalf of consumers who received automated solicitation telephone calls on their cellular and residential telephones, some of which were listed on the National Do-Not-Call Registry, without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* The case settled on a class-wide basis in 2015; final approval is pending.

- *Booth, et al. v. AppStack, et al.*—TMLG represents two certified classes of consumers who received automated, prerecorded solicitation telephone calls on their cellular telephones and Washington landlines without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, the Washington Automatic Dialing and Announcing Device statute, RCW 80.36.400, and the Washington Consumer Protection Act, RCW 19.86 *et seq.* The case is pending in the United States District Court for the Western District of Washington.

- *Bee, Denning, Inc., et al. v. Capital Alliance Group, et al.*—TMLG represents two certified classes of consumers who received junk faxes and automated, prerecorded solicitation telephone calls on their cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* The case is pending in the United States District Court for the Southern District of California.

- *Rose, et al. v. Bank of America Corp., et al.*—Filed on behalf of consumers who received automated, prerecorded collection telephone calls on their cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* TMLG worked to negotiate a nationwide settlement of $32,083,905, which was granted final approval in August 2014.

- *Gehrich v. Chase Bank USA*—Filed on behalf of consumers who received automated, prerecorded collection telephone calls on their cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* TMLG worked to negotiate a $34,000,000 nationwide settlement; final approval is pending.

- *In re Monitronics International, Inc. Telephone Consumer Protection Act Litigation*—Filed on behalf consumers who received automated, prerecorded solicitation telephone calls on their residential and business telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, the Washington Automatic Dialing and Announcing Device statute, RCW 80.36.400, and the Washington Consumer Protection Act, RCW 19.86 *et seq.* I serve as co-lead counsel in the MDL.

- *Arthur v. Sallie Mae, Inc.*—Filed on behalf of consumers who received automated, prerecorded collection telephone calls on their cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* TMLG worked to negotiate a $24.15 million nationwide settlement, and final approval was granted in 2012.

- *Hanley v. Fifth Third Bank*—Filed on behalf of consumers who received automated, prerecorded collection telephone calls on their cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* TMLG negotiated a $4.5 million settlement, which was granted final approval in December 2013.

- *Steinfeld v. Discover Financial Services, et al.*—Filed on behalf of consumers who received automated, prerecorded collection telephone calls on their cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. TMLG negotiated an $8.7 million settlement, which was granted final approval in March 2014.

- *Chesbro v. Best Buy Stores, L.P.*—Filed on behalf of consumers who received automated, prerecorded solicitation telephone calls on their residential telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* TMLG negotiated a $4.5 million settlement, which was granted final approval in September 2014.

11.     TMLG is litigating or has recently settled the following consumer protection class actions:

- *Dibb, et al. v. AllianceOne Receivables Management, Inc.*—TMLG represents three certified classes of Washington consumers who received unfair and deceptive debt collection notices that included threats of criminal prosecution. The case is pending in the United States District Court for the Western District of Washington.

- *Cavnar, et al. v. BounceBack, Inc.*—Filed in 2014 on behalf of Washington consumers who received false, misleading, and deceptive debt collection letters printed on the letter head of county prosecuting attorneys. Plaintiffs' motion for class certification is pending.

- *Jordan v. Nationstar Mortgage, LLC*—After a plaintiff class was certified by a Washington trial court, the action was removed to District Court in 2014. TMLG represents a class of homeowners who were improperly locked out of their homes by their mortgage lender.

- *Soto v. American Honda Motor Corporation*—Filed in 2012 on behalf of owners and lessees of 2008-2010 Honda Accords that consume motor oil at a much higher rate than intended, due to a systemic design defect. The case settled on a class-wide basis and final approval was granted in March 2014.

- *Smith v. Legal Helpers Debt Resolution LLC*—Filed in 2011 on behalf of consumers who were charged excessive fees for debt adjusting services in violation of Washington law. Class settlements were approved by the Court in December 2012 and December 2013.

- *Brown v. Consumer Law Associates LLC, et al.*—Filed in 2011 on behalf of consumers who were charged excessive fees for debt adjusting services in violation of Washington law. A class settlement was approved by the Court in 2013.

- *Bronzich, et al. v. Persels & Associates, LLC, et al.*—Filed in 2010 on behalf of consumers who were charged excessive fees for debt adjusting services in violation of Washington law. A class settlement was approved by the Court in 2013.

- *Milligan, et al. v. Toyota Motor Sales, Inc.*—Filed in 2009 on behalf of owners of 2001-2003 Toyota RAV4s containing defective Electronic Computer Modules, which cause harsh shifting conditions and permanent damage to the transmissions. TMLG worked to negotiate a nationwide class action settlement, and final approval was granted in January 2012.

- *Kitec Consolidated Cases*—Served as co-counsel in a national class action lawsuit against the manufacturers of defective hydronic heating and plumbing systems. The case settled for $125,000,000, and final approval was granted in 2011.

- *Seraphin v. AT&T Internet Services, Inc., et al.*—A multi-state class action filed in 2009 on behalf of AT&T internet customers who paid $20 a month or less for internet service and were assessed and Early Termination Fee when they cancelled service. A class settlement was approved by the Court in 2011.

12. TMLG is litigating or has recently settled the following privacy/data breach class action:

- *In re: Target Corporation Customer Data Security Breach Litigation*—Filed on behalf of consumers who had their financial and personal information compromised by Target's failure to implement and maintain reasonable security procedures and practices. Approximately 40 million credit and debit card users who purchased products from Target between November 27 and December 15, 2013 were affected by the data breach. I currently serve on the Complaint Committee in this multi-district litigation.

13.     TMLG is litigating or has recently settled the following wage and hour class actions:

- *Romatka, et al. v. Brinker International Payroll Company, L.P., et al.*—Filed in 2013 on behalf of approximated 900 workers who alleged violations of Washington State wage and hour laws. The case settled on a class-wide basis and approval was granted in March 2015.

- *Newell v. Home Care of Washington, Inc., et al*.—TMLG represented a certified class of more than 400 in-home health care workers who alleged violations of state wage and hour law. The case settled on a class-wide basis, and final approval was granted in January 2015.

- *Paz v. Sakuma Brothers Farms, Inc*.—Filed in 2013 on behalf of migrant and seasonal workers who alleged violations of Washington State wage and hours laws. A class-wide settlement was approved by the Court in December 2014.

- *Hill v. Xerox Business Services, LLC, et al., and Douglas v. Xerox Business Services, LLC, et al.*—TMLG represents two certified classes of current and former call center workers who allege violations of state and federal wage and hour laws. Both cases were filed in 2012 and are pending in the United States District Court for the Western District of Washington.

- *Dickerson v. Cable Communications, Inc., et al*.—Filed in 2012 on behalf of approximately 500 individuals alleging their employer violated Oregon's wage and hour laws. Defendants' systematic scheme of wage and hour violations involved, among other things, failure to pay non-managerial installation technicians for all hours worked, including overtime. The case settled on a class-wide basis, and final approval was granted in 2013.

- *Khadera v. ABM Industries, Inc*.—TMLG represented 337 employees who alleged violations of federal and state wage and hour laws. The case settled, and final approval was granted in 2012.

- *Simpson v. ABM Industries, Inc*.—TMLG represented a CR 23 class of approximately 6,800 employees who alleged Washington State wage and hour violations. The case settled in March 2012, and final approval of the settlement was granted in September 2012.

- *Barnett, et al. v. Wal-Mart Stores, Inc.*—Filed in 2001 on behalf of Washington employees alleging wage and hour violations by the country's largest private employer. After more than seven years of litigation, TMLG obtained a settlement of $35 million on behalf of a certified class of approximately 88,000 employees. That settlement was approved in July 2009.

- *McGinnity, et al. v. AutoNation, Inc., et al.*—TMLG represented a certified class of more than 500 employees who were denied earned vacation benefits. After nearly two years of litigation before an arbitrator, we obtained an award of $2.34 million on behalf of the class. We successfully defended the award on appeal, and the Washington Supreme Court denied Defendants' petition for review. A judgment in excess of $2,600,000 was satisfied in September 2009.

- *Ramirez, et al. v. Precision Drywall, Inc.*—TMLG represented a certified class of workers who alleged they were not paid for overtime work. The case was tried before a jury during a five-week period in 2010, and TMLG successfully obtained a judgment for the workers in excess of $4,000,000. TMLG continues to work on enforcing the judgment against multiple defendants.

14.     In 2013, TMLG, Law Offices of SaraEllen Hutchison, PLLC, Law Office of Thomas G. Jarrard, PLLC, and Robert Mitchell, Esq. (collectively, "Knapp-Ellis Counsel") filed *Amanda Knapp-Ellis, et al. v. Stellar Recovery, Inc.*, Case No. 2:13-CV-01967-RSM, in the United States District Court for the Western District of Washington ("Washington Action"). Edelman, Combs, Latturner & Goodwin, LLC ("ECLG") had filed the above-captioned action several months beforehand ("Illinois Action"). In 2015, ECLG and the Knapp-Ellis Counsel began cooperating in the prosecution of the Washington and Illinois Actions.

15.     Plaintiffs' counsel have invested numerous hours and advanced significant costs into the investigation and prosecution of this case. Plaintiffs' counsel intensively investigated the factual and legal bases for their claims. Plaintiffs propounded written discovery and met and conferred with Stellar to resolve discovery disputes. Plaintiffs' discovery requests were designed to elicit information regarding Stellar's calling practices, and any electronic records that Stellar maintained documenting its calls.

16.     Plaintiffs also deposed witnesses and served third party subpoenas.  Plaintiffs deposed Stellar's then-President, Robert Burnside, and Dialer Manager, Kendra Stokes.  In addition, Plaintiffs served subpoenas for documents on third parties, Comcast, LiveVox, and DialConnection, LLC.

17.     Through the discovery process, Plaintiffs learned that Stellar places approximately 500,000 debt collection telephone calls each day through an automated telephone system.  Although Stellar obtains some of the telephone numbers it calls from its clients, Stellar admitted it obtains many telephone numbers from skip tracing companies.  Moreover, Stellar did not "scrub" these telephone numbers to determine whether they belonged to cell phones until early 2013, which coincides with the start of this litigation.  Although Stellar's dialing system, LiveVox, includes a feature that would scrub for cell phones, Stellar did not use it.

18.     Stellar has steadfastly disputed Plaintiffs' claim that LiveVox software constitutes an automatic telephone dialing system ("ATDS"), and maintains that an individualized analysis of each account would be required in order to determine which potential class members consented to calls on their cell phones, and which class members did not consent.

19.     In response to Plaintiffs' discovery requests, Stellar produced a terabyte of call data.  Although Plaintiffs retained an expert to analyze a portion of the data, additional extensive and expensive analysis would have been required for class certification.

20.     Plaintiffs' counsel have together incurred over $12,000 in out-of-pocket costs prosecuting this litigation.  To date, Plaintiffs' attorneys have together incurred approximately $300,000 in fees.  For the work they have performed in this case, Plaintiffs' counsel seek total fees and costs of $105,000.  This request is subject to court approval.  I will provide further document and support for this request if the Court preliminarily approves the Settlement Agreement and authorizes Plaintiffs to file a petition for fees and costs.

21.     At all times, the Parties' settlement negotiations were highly adversarial, non-collusive and at arm's-length.  Plaintiffs' counsel were well-informed about the strengths and weaknesses of their case at the time they reached settlement in this case.  I believe the settlement

is fair, reasonable, adequate, and in the best interest of the Settlement Class as a whole. Plaintiffs' counsel have specialized knowledge of the legal and technological issues necessary to succeed in TCPA litigation and used that experience to obtain a settlement that would provide valuable injunctive relief to Settlement Class Members, when it became clear that a monetary settlement would not be possible. Stellar repeatedly threatened to declare bankruptcy if the case proceeded to judgment. In that scenario, Settlement Class Members very likely would have received nothing at all.

22. The named Plaintiffs were willing and able to prosecute this case by responding to written discovery, sitting for a deposition, and testifying at trial. Plaintiffs' support of the settlement is independent of any service award and not conditioned on the Court awarding any particular amount or any award at all.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED at Seattle, Washington, this 29th day of March, 2016.


   /s/ Beth E. Terrell                 
Beth E. Terrell

<u>CERTIFICATE OF SERVICE</u>

I, Adrienne D. McEntee, hereby certify that on March 29, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Benjamin Nicholas Hutnick, *Admitted Pro Hac Vice*
> Email: bhutnick@bermanrabin.com
> BERMAN & RABIN, P.A.
> 15280 Metcalf
> Overland Park, Kansas 66223
> Telephone: (913) 649-1555
> Facsimile: (913) 652-9474
>
> *Attorneys for Defendant*

DATED this 29th day of March, 2016.

> TERRELL MARSHALL LAW GROUP PLLC
>
> By:   /s/ Adrienne D. McEntee
>     Beth E. Terrell
>     Email: bterrell@terrellmarshall.com
>     Mary B. Reiten
>     Email: mreiten@terrellmarshall.com
>     Adrienne D. McEntee
>     Email: amcentee@terrellmarshall.com
>     936 North 34th Street, Suite 300
>     Seattle, Washington 98103-8869
>     Telephone: (206) 816-6603
>     Facsimile: (206) 319-5450
>
>     *Attorneys for Plaintiffs and the Putative Class*

# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT SUNDIN,** | ) | |
| **on behalf of himself and a class,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 13-CV-01560** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **STELLAR RECOVERY, INC., et al,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DECLARATION OF GARRETT SCHANCK**
**IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, GARRETT SCHANCK, declare as follows:

1.  I am Chief Executive Officer of Stellar Recovery, Inc. I have personal knowledge of the following and if called as a witness I could and would testify under oath.

2.  I submit this declaration in support of preliminary approval of the proposed class action settlement in this matter.

3.  In light of the instant case, Stellar Recovery has committed to full compliance with the Telephone Consumer Protection Act ("TCPA"), and now closely monitors the litigation, legislation, and administrative decisions that continue to shape the Act, with concentration on practical application and compliance.

4.  In the course of discovery in the instant case, it was determined that the putative class would include tens of millions of phone calls to millions of putative class members. Stellar does not have the financial means necessary to provide meaningful cash compensation to putative class members, nor does it have the financial means necessary to facilitate effective

administration of a putative class this size. Stellar will make its most recent financial statement available to the Court for in camera review.

5. In light of the instant case, and in view of the allegations contained therein with an eye toward providing significant injunctive relief to putative class members, Stellar has implemented several policies and procedures, independently and with the assistance of its vendors, to ensure strict compliance with the TCPA. Stellar's ongoing compliance initiatives include the following:

a) After the onset of the instant case, and as a result of the perceived shortcomings in TCPA compliance alleged by the Plaintiff related to this and other lawsuits, beginning in December 2014 Stellar began initial and ongoing comprehensive training specific to the Telephone Consumer Protection Act for all employees, including a review of the full text of the statute, its prohibitions and penalties, Stellar's TCPA compliance initiatives, and any significant legal developments that may affect Stellar's TCPA compliance initiatives. The class-room and hands-on TCPA training for new employees encompasses approximately 15 hours, and existing employees are provided with approximately 10 TCPA training hours per year. The cost of providing this training is approximately $15,000.00 per year.

b) Since December 2014 all telephone numbers received by Stellar, from any source, for use in contacting consumers, are "scrubbed" by a specialized vendor called IDI (Interactive Data Inc.) immediately upon receipt, on a daily basis, at a cost of $1,200.00 per month to identify those telephone numbers which are assigned to cellular phones.

c)  In light of the instant case, and as a part of the cellular telephone scrubbing initiative detailed in Paragraph 5(b), all telephone numbers identified as being assigned to cellular phones are now immediately notated as such within Stellar's Latitude collection software, and firm restrictions are set within said software so that those telephone numbers shall not be dialed by an automated system under the TCPA, unless express permission to do so is obtained from the individual to whom a telephone number is assigned.

d)  Upon establishing telephone contact with any individual whose number has been identified as a cellular telephone, since December 2014 Stellar employees have been required to inquire as to whether the number is a cellular telephone or land-line, and to further inquire whether Stellar has permission to contact the individual at that number.  Stellar employees are required to notate the individual's response in the Latitude software.

e)  Whereas the absence of screening previously made TCPA selective messaging difficult, implementation of the scrubbing initiative discussed in Paragraph 5(b), in conjunction with Stellar's implementation of the additional TCPA compliance and training measures discussed herein, will allow Stellar to refrain from leaving automated messages on any telephone number identified as being assigned to a cellular telephone, unless express permission to do so has been obtained from the individual to whom said telephone number is assigned.

f)  In conjunction with the initiative detailed in Paragraph 5(d), Stellar now requires all employees to conspicuously notate consent to dial all telephone numbers in its written account documentation if and when said consent is obtained, and likewise requires all

Stellar employees to notate any revocation of consent to dial any telephone number in its written account documentation if and when said revocation is made. Whereas Stellar previously did not have a firm written policy on the length of time it would store written account documentation and recorded telephone calls, in light of the instant litigation and its corresponding compliance initiatives, Stellar now stores all written account documentation and recorded telephone calls indefinitely, and for at least four (4) years.

g) Whereas Stellar previously only recorded some of its successful outbound calls, in light of the instant litigation and concerns about accurate documentation of consent revocation, in February 2015 Stellar began utilizing a vendor (LiveVox) for the storage of ALL recordings, at a current cost of $15,000.00 a month, which increases each month due to the volume being stored and will eventually go as high as $27,000.00 per month

h) Stellar's recording of all inbound and outbound calls will facilitate improved TCPA Compliance ongoing training initiatives. Stellar now uses the recordings to perform improved ongoing quality assurance and compliance evaluations with its employees, to ensure that the employees comply with Stellar's stricter approach to TCPA compliance generally, and consent or revocation thereof specifically. Stellar routinely and randomly screens recorded calls to ensure that its employees are adhering to its stricter TCPA compliance measures, and quality assurance training representatives review recorded calls with Stellar employees during individual one-on-one counseling sessions, providing them with an opportunity to address any TCPA compliance failures. Since April 2015, Stellar has significantly increased its QA

implementation measures with regard to call review. QA reviews of calls are now performed daily via live monitoring and via recorded call playback. Training and counseling are done on the spot with each agent when areas for improvement are identified, and two written QA assessments are done monthly for each collector. In September 2015, Stellar also hired an additional QA employee whose primary responsibility is to perform call monitoring and call review, at an annual cost of $45,000.00 per year. Beginning in May 2016, Stellar's QA department will be holding monthly meetings with all collectors, at which selected calls will be played and discussed in a group setting for further training, development, and compliance.

6. The cost to Stellar of implementing the above compliance measures to insure maximum TCPA compliance is significant. Although a precise dollar figure is difficult to obtain due to the ongoing nature of these compliance initiatives and their pervasive effect on multiple administrative and operational planes, Stellar estimates that implementation of these initiatives has resulted in an overall 25-30% reduction its overall production, or an approximate bottom-line cost of between $250,000.00 and $750,000.00. Stellar estimates that the total cost of implementation moving forward, including past, present, and future costs associated with the injunctive relief, is valued at $1,000,000.00, minimum.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

By: _____

Garrett Schanck, Chief Executive Officer

Date: 3/28/16

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ROBERT SUNDIN,                          )
on behalf of himself and a class,        )
                                         )      13-CV-1560
              Plaintiff,                 )
                                         )      Judge James B. Zagel
        vs.                              )      Magistrate Judge Sidney I. Schenkier
                                         )
STELLAR RECOVERY, INC., and DOES         )
1-10,                                    )
                                         )
              Defendant.                 )

<u>DECLARATION OF DANIEL A. EDELMAN</u>

Daniel A. Edelman declares under penalty of perjury, as provided for by 28 U.S.C. §1746, that the following statements are true:

1.      Edelman, Combs, Latturner & Goodwin, LLC, has 9 principals, Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Tara L. Goodwin, Francis R. Greene, Julie Clark, Heather Kolbus, Cassandra P. Miller, and Tiffany N. Hardy, and three associates.

2.      **Daniel A. Edelman** is a 1976 graduate of the University of Chicago Law School. From 1976 to 1981 he was an associate at the Chicago office of Kirkland & Ellis with heavy involvement in the defense of consumer class action litigation (such as the General Motors Engine Interchange cases). In 1981 he became an associate at Reuben & Proctor, a medium-sized firm formed by some former Kirkland & Ellis lawyers, and was made a partner there in 1982. From the end of 1985 he has been in private practice in downtown Chicago. Virtually all of his practice involves litigation on behalf of consumers, through both class and individual actions. He is the author of the chapters on the "Fair Debt Collection Practices Act," "Truth in Lending Act," and "Telephone Consumer Protection Act" in *Illinois Causes of Action* (Ill. Inst. For Cont. Legal Educ. 2014 and earlier editions), author of the chapter on the Telephone Consumer Protection Act in *Federal Deception Law* (National Consumer Law Center 2013 Supp.), author of *Collection Defense* (Ill. Inst. Cont. Legal Educ. 2008, 2011), and *Collection Litigation: Representing the Debtor* (Ill. Inst. Cont. Legal Educ. 2014); author of Chapter 6, "Predatory Lending and Potential Class Actions," in *Real Estate Litigation* (Ill. Inst. For Cont. Legal Educ. 2004, 2008, 2013), co-author of Rosmarin & Edelman, *Consumer Class Action Manual* (2d-4th editions, National Consumer Law Center 1990, 1995 and 1999); author of *Representing Consumers in Litigation with Debt Buyers* (Chicago Bar Ass'n 2008); *Predatory Mortgage Lending* (Ill. Inst. for Cont. Legal. Educ. 2008, 2011), author of Chapter 6, "Predatory Lending and Potential Class Actions," in *Real Estate Litigation* (Ill. Inst. For Cont. Legal Educ. 2004, 2008, 2014), *Illinois Consumer Law*, in Consumer Fraud and Deceptive Business Practices Act and Related Areas Update (Chicago Bar Ass'n 2002); *Payday Loans: Big Interest Rates and Little Regulation*, 11 Loy.Consumer L.Rptr. 174 (1999); author of *Consumer Fraud and Insurance Claims*, in Bad Faith and Extracontractual Damage Claims in Insurance Litigation, Chicago Bar Ass'n 1992; co-author of Chapter 8, "Fair Debt Collection Practices Act," *Ohio Consumer Law* (1995 ed.); co-author of *Fair Debt Collection: The Need for Private*

1

*Enforcement*, 7 Loy.Consumer L.Rptr. 89 (1995); author of *An Overview of The Fair Debt Collection Practices Act*, in Financial Services Litigation, Practicing Law Institute (1999); co-author of *Residential Mortgage Litigation*, in Financial Services Litigation, Practicing Law Institute (1996); author of *Automobile Leasing: Problems and Solutions*, 7 Loy.Consumer L.Rptr. 14 (1994); author of *Current Trends in Residential Mortgage Litigation*, 12 Rev. of Banking & Financial Services 71 (April 24, 1996); co-author of *Illinois Consumer Law* (Chicago Bar Ass'n 1996); co-author of D. Edelman and M. A. Weinberg, *Attorney Liability Under the Fair Debt Collection Practices Act* (Chicago Bar Ass'n 1996); and author of *The Fair Debt Collection Practices Act: Recent Developments*, 8 Loy.Consumer L. Rptr. 303 (1996), among others. Mr. Edelman is also a frequent speaker on consumer law topics for various legal organizations including the Chicago Bar Association, the National Consumer Law Center's Consumer Rights Litigation Conference, and the Illinois Institute for Continuing Legal Education, and he has testified on behalf of consumers before the Federal Trade Commission and the Illinois legislature. He is a member of the Illinois bar and admitted to practice in the following courts: United States Supreme Court, Seventh Circuit Court of Appeals, First Circuit Court of Appeals, Second Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Sixth Circuit Court of Appeals, Eighth Circuit Court of Appeals, Ninth Circuit Court of Appeals, Tenth Circuit Court of Appeals, Eleventh Circuit Court of Appeals, United States District Courts for the Northern and Southern Districts of Indiana, United States District Courts for the Northern, Central, and Southern Districts of Illinois, United States District Courts for the Eastern and Western Districts of Wisconsin, and the Supreme Court of Illinois. He is a member of the Northern District of Illinois trial bar.

       3.    **Cathleen M. Combs** is a 1976 graduate of Loyola University Law School. From 1984-1991, she supervised the Northwest office of the Legal Assistance Foundation of Chicago, where she was lead or co-counsel in class actions in the areas of unemployment compensation, prison law, social security law, and consumer law. She joined what is now Edelman, Combs, Latturner & Goodwin, LLC in early 1991 and became a named partner in 1993. Ms. Combs received an Award for Excellence in Pro Bono Service from the Judges of the United States District Court for the Northern District of Illinois and the Chicago Chapter of the Federal Bar Association on May 18, 2012. Ms. Combs has argued over fifteen cases in the 1st, 3rd and 7th Circuit Court of Appeals and the Illinois Appellate Court, and she is a frequent speaker on consumer law topics at various legal organizations including the Chicago Bar Association, the National Consumer Law Center's Consumer Rights Litigation Conferences, and the Practicing Law Institute's Consumer Financial Services Institute. Ms. Combs is coauthor of *The Bankruptcy Practitioner's Guide to Consumer Financial Services Actions After the Subprime Mortgage Crisis* (LRP Publications 2010). Her reported decisions include: *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014) (en banc); *Siwulec v. J.M. Adjustment Servs., LLC*, 465 Fed. Appx. 200 (3d Cir. 2012); *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002); *Chandler v. American General Finance, Inc.*, 329 Ill. App.3d 729, 768 N.E.2d 60 (1st Dist. 2002); *Miller v. McCalla Raymer*, 214 F.3d 872 (7th Cir. 2000); *Bessette v. Avco Financial Services*, 230 F.3d 439 (1st Cir. 2000); *Emery v. American Gen. Fin., Inc.*, 71 F.3d 1343 (7th Cir. 1995); *McDonald v. Asset Acceptance, LLC*, 296 F.R.D. 513 (E.D.Mich. 2013); and *Tocco v. Real Time Resolutions*, ___ F.Supp.2d ___, 1:14CV810, 2014 WL 3964948 (S.D.N.Y., Aug. 13, 2014). She is a member of the Illinois bar and admitted to practice in the following courts: United States District Courts for the Northern, Central and Southern Districts of Illinois, United States District Courts for the Northern and Southern Districts of Indiana, Seventh Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Tenth Circuit Court of Appeals, and United States District Court for the District of Colorado. She is a member of the Northern District of Illinois trial bar.

4.     **James O. Latturner** is a 1962 graduate of the University of Chicago Law School.  Until 1969, he was an associate and then a partner at the Chicago law firm of Berchem, Schwanes & Thuma.  From 1969 to 1995 he was Deputy Director of the Legal Assistance Foundation of Chicago, where he specialized in consumer law, including acting as lead counsel in over 30 class actions.  His publications include Chapter 8 ("Defendants") in *Federal Practice Manual for Legal Services Attorneys* (M. Masinter, Ed., National Legal Aid and Defender Association 1989); *Governmental Tort Immunity in Illinois*, 55 Ill.B.J. 29 (1966); *Illinois Should Explicitly Adopt the Per Se Rule for Consumer Fraud Act Violations*, 2 Loy.Consumer L.Rep. 64 (1990), and *Illinois Consumer Law* (Chicago Bar Ass'n 1996).  He has taught in a nationwide series of 18 Federal Practice courses sponsored by the Legal Services Corporation, each lasting four days and designed for attorneys with federal litigation experience.  He has argued over 30 appeals, including two cases in the United States Supreme Court, three in the Illinois Supreme Court, and numerous cases in the Seventh, Third, Fifth, and Eleventh Circuits.  Mr. Latturner was involved in many of the significant decisions establishing the rights of Illinois consumers.  He is a member of the Northern District of Illinois trial bar.

5.     **Tara L. Goodwin** is a graduate of the University of Chicago (B.A., with general honors, 1988)and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., with high honors,1991).  Ms. Goodwin was Chair of the Chicago Bar Association's Consumer Law Committee from 2007 - 2010, and she has been on the faculty of the Practicing Law Institute's Consumer Financial Services Institute in Chicago for the past few years, speaking on issues relating to the Fair Debt Collection Practices Act and mortgage litigation.  Ms. Goodwin is also a frequent speaker at the Chicago Bar Association, speaking on topics such as how to assist consumers with credit reporting problems.  **Reported Cases.**  *Williams v. Chartwell Financial Services, Ltd.*, 204 F.3d 748 (7th Cir. 2000); *Hillenbrand v. Meyer Medical Group*, 288 Ill.App.3d 871, 682 N.E.2d 101 (1st Dist. 1997), later opinion, 308 Ill.App.3d 381, 720 N.E.2d 287 (1st Dist. 1999); *Bessette v. Avco Fin. Servs.*, 230 F.3d 439 (1st Cir. 2000); *Large v. Conseco Fin. Servicing Co.*, 292 F.3d 49 (1st Cir. 2002); *Flippin v. Aurora Bank, FSB*, 12 C 1996, 2012 WL 3260449 , 2012 U.S. Dist. LEXIS 111250 (N.D.Ill. Aug. 8, 2012); *Henry v. Teletrack, Inc.*, 11 C 4424,  2012 WL 769763, 2012 U.S. Dist. LEXIS 30495 (N.D.Ill.  March 7, 2012); *Kesten v. Ocwen Loan Servicing, LLC*, 11 C 6981, 2012 WL 426933, 2012 U.S. Dist. LEXIS 16917 (N.D.Ill. Feb. 9, 2012); *Bunton v. Cape Cod Village, LLC*, No. 09-1044, 2009 WL 2139441, 2009 U.S. Dist. LEXIS 57801 (C.D.Ill. July 6, 2009); *Wilson v. Harris N.A.*, No. 06 C 5840, 2007 WL 2608521, 2007 U.S. Dist. LEXIS 65345  (N.D.Ill. Sept. 4, 2007); *Carbajal v. Capital One*, 219 F.R.D. 437 (N.D.Ill. 2004); *Russo v. B&B Catering*, 209 F.Supp.2d 857 (N.D.Ill. 2002);  *Romaker v. Crossland Mtg. Co.*, No. 94 C 3328,  1996 WL 254299, 1996 U.S.Dist. LEXIS 6490  (N.D.Ill. May 10, 1996);  *Mount v. LaSalle Bank Lake View*, 926 F.Supp. 759 (N.D.Ill 1996).  Ms. Goodwin is a member of the Illinois bar and is admitted in the Seventh, First, and D.C. Circuit Courts of Appeals, and the United States District Courts for the Northern and Central Districts of Illinois, and the Northern District of Indiana.  She is also a member of the Northern District of Illinois trial bar.

6.     **Francis R. Greene** is a graduate of Johns Hopkins University (B.A 1984), Rutgers University (Ph.D., October 1991), and Northwestern University Law School (J.D., 2000).  Mr. Greene was Vice Chair of the Chicago Bar Association's Consumer Law Committee from 2010-11, and Chair from 2011-12.   **Reported Cases:** *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *Soppet v. Enhanced Recovery Co.,* 679 F.3d 637 (7th Cir.  2012); *Ruth v. Triumph Partnerships*, 577 F.3d 790 (7th Cir. 2009); *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760 (7th Cir. 2006); *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill.2d 218, 856 N.E.2d 389 (2006); *Johnson v. Thomas*, 342 Ill.App.3d 382,  794 N.E.2d 919 (1st Dist. 2003); *Hale v. Afni, Inc.*, 08 C 3918, 2010 WL 380906, 2010 U.S. Dist. LEXIS 6715 (N.D.Ill. Jan. 26,

3

2010); *Parkis v. Arrow Fin Servs.*, 07 C 410, 2008 WL 94798, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Foster v. Velocity Investments*, 07 C 824, 2007 WL 2461665, 2007 U.S. Dist. LEXIS 63302 (N.D.Ill. Aug. 24, 2007); *Foreman v. PRA III, LLC*, 05 C 3372, 2007 WL 704478, 2007 U.S. Dist. LEXIS 15640 (N.D.Ill. March 5, 2007); *Schutz v. Arrow Fin. Services*, 465 F. Supp. 2d 872 (N.D.Ill. 2006); *Pleasant v. Risk Management Alternatives*, 02 C 6886, 2003 WL 22175390 (N.D.Ill. Sept. 19, 2003). He is a member of the Northern District of Illinois trial bar.

7.      **Julie Clark** (neé Cobalovic) is a graduate of Northern Illinois University (B.A., 1997) and DePaul University College of Law (J.D., 2000). **Reported Cases:** *Record-A-Hit, Inc. v. Nat'l. Fire Ins. Co.*, 377 Ill. App. 3d 642; 880 N.E.2d 205 (1st Dist. 2007); *Qualkenbush v. Harris Trust & Savings Bank*, 219 F. Supp.2d 935 (N.D.Ill. 2002); *Covington-McIntosh v. Mount Glenwood Memory Gardens*, 00 C 186, 2002 WL 31369747 (N.D.Ill., Oct. 21, 2002), later opinion, 2003 WL 22359626 (N.D.Ill. Oct. 15, 2003); *Western Ry. Devices Corp. v. Lusida Rubber Prods.*, 06 C 52, 2006 WL 1697119, 2006 U.S. Dist. LEXIS 43867 (N.D.Ill. June 13, 2006); *Nautilus Ins. Co. v. Easy Drop Off, LLC*, 06 C 4286, 2007 U.S. Dist. LEXIS 42380 (N.D.Ill. June 4, 2007); *Ballard Nursing Center, Inc. v. GF Healthcare Products, Inc.*, 07 C 5715, 2007 WL 3448731, 2007 U.S. Dist. LEXIS 84425 (N.D.Ill. Nov. 14, 2007); *Sadowski v. Med1 Online, LLC*, 07 C 2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill. May 17, 2008); *Sadowski v. OCO Biomedical, Inc.*, 08 C 3225, 2008 WL 5082992, 2008 U.S. Dist. LEXIS 96124 (N.D.Ill. Nov. 25, 2008); *ABC Bus. Forms, Inc. v. Pridamor, Inc.*, 09 C 3222, 2009 WL 4679477, 2009 U.S. Dist. LEXIS 113847 (N.D.Ill. Dec. 1, 2009); *Glen Ellyn Pharmacy v. Promius Pharma, LLC*, 09 C 2116, 2009 WL 2973046, 2009 U.S. Dist. LEXIS 83073 (N.D.Ill. Sept. 11, 2009); *Garrett v. Ragle Dental Lab., Inc.*, 10 C 1315, 2010 WL 4074379, 2010 U.S. Dist. LEXIS 108339 (N.D.Ill. Oct. 12, 2010); *Garrett v. Sharps Compliance, Inc.*, 10 C 4030, 2010 WL 4167157, 2010 U.S. Dist. LEXIS 109912 (N.D.Ill. Oct. 14, 2010).

8.      **Heather A. Kolbus** (neé Piccirilli) is a graduate of DePaul University (B.S. *cum laude,* 1997), and Roger Williams University School of Law (J.D., 2002). **Reported Cases:** *Clark v. Experian Info. Solutions, Inc.*, 8:00cv1217-22, 2004 WL 256433, 2004 U.S. Dist. LEXIS 28324 (D.S.C., Jan. 14, 2004); *DeFrancesco v. First Horizon Home Loan Corp.*, 06-0058, 2006 WL 3196838, 2006 U.S. Dist. LEXIS 80718 (S.D.Ill. Nov. 2, 2006); *Jeppesen v. New Century Mortgage Corp.*, 2:05cv372, 2006 WL 3354691, 2006 U.S. Dist. LEXIS 84035 (N.D.Ind. Nov. 17, 2006); *Benedia v. Super Fair Cellular, Inc.*, 07 C 1390, 2007 WL 2903175, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill. Sept. 26, 2007); *Gonzalez v. Codilis & Assocs., P.C.*, 03 C 2883, 2004 WL 719264, 2004 U.S. Dist. LEXIS 5463 (N.D.Ill. March 30, 2004); *Centerline Equipment Corp. v. Banner Personnel Svc., Inc.*, 07 C 1611, 2009 WL 1607587, 2009 U.S. Dist. LEXIS 48092 (N.D.Ill. June 9, 2009); *R. Rudnick & Co. v. G.F. Protection, Inc.*, 08 C 1856, 2009 WL 112380, 2009 U.S. Dist. LEXIS 3152 (N.D.Ill. Jan. 15, 2009); *Pollack v. Cunningham Financial Group, LLC*, 08 C 1405, 2008 WL 4874195, 2008 U.S. Dist. LEXIS 4166 (N.D.Ill. June 2, 2008); *Pollack v. Fitness Innovative Techs., LLC*, No. 08 CH 03430, 2009 WL 506280, 2009 TCPA Rep. 1858 (Ill. Cir. Ct., Jan. 14, 2009); *R. Rudnick & Co. v. Brilliant Event Planning, Inc.*, No. 09 CH 18924, 2010 WL 5774848, 2010 TCPA Rep. 2099 (Ill. Cir. Ct., Nov. 30, 2010).

9.      **Cassandra P. Miller** is a graduate of the University of Wisconsin – Madison (B.A. 2001) and John Marshall Law School (J.D. *magna cum laude* 2006). **Reported Cases:** *Pietras v. Sentry Ins. Co.*, 513 F.Supp.2d 983 (N.D.Ill. 2007); *Hernandez v. Midland Credit Mgmt.*, 04 C 7844, 2007 WL 2874059, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill. Sept. 25, 2007); *Balogun v. Midland Credit Mgmt.*, 1:05cv1790, 2007 WL 2934886, 2007 U.S.

Dist. LEXIS 74845 (S.D.Ind. Oct. 5, 2007); *Herkert v. MRC Receivables Corp.*, 655 F. Supp. 2d 870 (N.D.Ill. 2008); *Miller v. Midland Credit Management, Inc.*, No. 08 C 780, 2009 WL 528796, 2009 U.S. Dist. LEXIS 16273 (N.D.Ill. March 2, 2009); *Frydman v. Portfolio Recovery Associates, LLC*, 11 C 524, 2011 WL 2560221, 2011 U.S. Dist. LEXIS 69502 (N.D.Ill. June 28, 2011).

10. **Tiffany N. Hardy** is a graduate of Tuskegee University (B.A. 1998) and Syracuse University College of Law (J.D. 2001). **Reported cases:** *Unifund v. Shah*, 407 Ill.App.3d 737, 946 N.E.2d 885 (1st Dist. 2011), later opinion, 2013 IL App (1st) 113658, 993 N.E.2d 518; *Tocco v. Real Time Resolutions*, 14cv810, 2014 WL 3964948 (S.D.N.Y., Aug. 13, 2014); *Balbarin v. North Star*, 10 C 1846, 2011 WL 211013, 2011 U.S. Dist. LEXIS 686 (N.D.Ill. Jan. 5, 2011)(class certified); *Diaz v. Residential Credit Solutions, Inc.*, 965 F.Supp.2d 249 (E.D.N.Y. 2013), later opinion, 297 F.R.D. 42 (E.D.N.Y. 2014), later opinion, 299 F.R.D. 16 (E.D.N.Y. 2014); *Manlapaz v. Unifund*, 08 C 6524, 2009 WL 3015166, 2009 U.S. Dist. LEXIS 85527 (N.D.Ill. Sept. 15, 2009); *Matmanivong v. Unifund*, 08 C 6415, 2009 WL 1181529, 2009 U.S. Dist. LEXIS 36287 (N.D.Ill. Apr. 28, 2009); *Kubiski v. Unifund*, 08 C 6421, 2009 WL 774450, 2009 U.S. Dist. LEXIS 26754 (N.D.Ill. Mar. 25, 2009); *Cox v. Unifund CCR Partners*, 08 C 1005 (N.D.Ill. Dec. 4, 2008) (Report and Recommendation for Class Certification); *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07 C 3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied); *Cotton v. Asset Acceptance*, 07 C 5005, 2008 WL 2561103, 2008 U.S. Dist. LEXIS 49042 (N.D.Ill. June 26, 2008) (class certified); *Ketchem v. American Acceptance Co.*, 641 F. Supp. 2d 782 (N.D.Ind. 2008); *D'Elia v. First Capital*, 07 C 6042, 2008 WL 4344571, 2008 U.S. Dist. LEXIS 22461 (N.D.Ill. Mar. 19, 2008). She is admitted in New York and the District of Columbia as well as Illinois.

11. **Associates**:

    a. **Emiliya Gumin Farbstein** is a graduate of the University of Illinois at Urbana-Champaign (B.S.B.A. 2006) and University of Minnesota Law School (J.D., magna cum laude, 2012).

    b. **Michelle Alyea** is a graduate of Valparaiso University (B.A., 1998, M.A., 2009) and Valparaiso University School of Law (J.D., 2012). She is admitted in Illinois and Indiana.

    c. **Sarah Barnes** is a graduate of Michigan State University (B.A. 2010) and Chicago-Kent College of Law (J.D., 2015).

12. The firm also has 10 legal assistants, as well as other support staff.

13. Since its inception, the firm has recovered more than $500 million for consumers. The types of cases handled by the firm are illustrated by the following:

14. **Collection practices:** The firm has brought a number of cases under the Fair Debt Collection Practices Act, both class and individual. Decisions in these cases include: *Jenkins v. Heintz*, 25 F.3d 536 (7th Cir. 1994), aff'd 514 U.S. 291 (1995) (FDCPA coverage of attorneys); *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014)(en banc); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014), later opinion, 807 F.3d 872 (7th Cir. 2015) (collection of time-barred debts); *Siwulec v. J.M. Adjustment Servs., LLC*, 465 Fed. Appx. 200 (3d Cir. 2012); (activities of mortgage company field agents); *Fields v. Wilber Law Firm, P.C.*,

383 F.3d 562 (7th Cir. 2004); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534 (7th Cir. 2003) (FDCPA coverage of debt buyers); *Peter v. GC Servs. L.P.*, 310 F.3d 344 (5th Cir. 2002); *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002) (attorney letters without attorney involvement); *Boyd v. Wexler*, 275 F.3d 642 (7th Cir. 2001); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000); *Johnson v. Revenue Management, Inc.*, 169 F.3d 1057 (7th Cir.1999); *Keele v. Wexler & Wexler*, 95 C 3483, 1995 WL 549048, 1995 U.S.Dist. LEXIS 13215 (N.D.Ill. Sept. 12, 1995) (motion to dismiss), later opinion, 1996 WL 124452, 1996 U.S.Dist. LEXIS 3253 (N.D.Ill., March 18, 1996) (class), aff'd, 149 F.3d 589 (7th Cir. 1998); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997); *Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232 (2nd Cir. 1998); *Young v. Citicorp Retail Services, Inc.*, No. 97-9397, 1998 U.S.App. LEXIS 20268, 159 F.3d 1349 (2nd Cir., June 29, 1998) (unpublished); *Charles v. Lundgren & Assocs., P.C.*, 119 F.3d 739 (9th Cir. 1997); *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996), aff'g *Avila v. Van Ru Credit Corp.*, 94 C 3234, 1994 WL 649101 (N.D.Ill., Nov. 14, 1994), later opinion, 1995 WL 22866 (N.D.Ill., Jan. 18, 1995), later opinion, 1995 WL 41425 (N.D.Ill., Jan. 31, 1995), later opinion, 1995 WL 55255 (N.D.Ill., Feb. 8, 1995), later opinion, 1995 WL 683775, 1995 U.S.Dist. LEXIS 17117 (N.D.Ill., Nov. 16, 1995); *Tolentino v. Friedman*, 833 F.Supp. 697 (N.D.Ill. 1993), aff'd in part and rev'd in part, 46 F.3d 645 (7th Cir. 1995); *Diaz v. Residential Credit Solutions, Inc.*, 965 F.Supp.2d 249 (E.D.N.Y. 2013), later opinion, 297 F.R.D. 42 (E.D.N.Y. 2014), later opinion, 299 F.R.D. 16 (E.D.N.Y. 2014); *Stubbs v. Cavalry SPV I*, 12 C 7235, 2013 WL 1858587 (N.D.Ill., May 1, 2013); *Osborn v. J.R.S.-I., Inc.*, 13 C 621, 2013 WL 2467654 (N.D.Ill., June 7, 2013); *Terech v. First Resolution Mgmt. Corp.*, 854 F.Supp.2d 537, 544 (N.D.Ill. 2012); *Casso v. LVNV Funding, LLC*, 12 C 7328, 2013 WL 3270654 (N.D.Ill., June 26, 2013); *Simkus v. Cavalry Portfolio Services, LLC*, 11 C 7425, 2012 WL 1866542 (N.D.Ill., May 22, 2012); *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513 (E.D.Mich. 2013); *Ramirez v. Apex Financial Management, LLC*, 567 F. Supp.2d 1035 (N.D. Ill. 2008); *Cotton v. Asset Acceptance, LLC*, 07 C 5005, 2008 WL 2561103, 2008 U.S. Dist. LEXIS 49042 (N.D.Ill., June 26, 2008); *Buford v. Palisades Collection, LLC*, 552 F. Supp. 2d 800 (N.D.Ill. 2008); *Martin v. Cavalry Portfolio Servs., LLC*, 07 C 4745, 2008 WL 4372717, 2008 U.S. Dist. LEXIS 25904 (N.D.Ill., March 28, 2008); *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07 C 3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied); *Hernandez v. Midland Credit Mgmt.*, 04 C 7844, 2007 WL 2874059, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill., Sept. 25, 2007) (balance transfer program); *Blakemore v. Pekay*, 895 F.Supp.972 (N.D.Ill. 1995); *Oglesby v. Rotche*, 93 C 4183, 1993 WL 460841, 1993 U.S.Dist. LEXIS 15687 (N.D.Ill., Nov. 5, 1993), *later opinion*, 1994 U.S.Dist. LEXIS 4866, 1994 WL 142867 (N.D.Ill., April 18, 1994); *Laws v. Cheslock*, 98 C 6403, 1999 WL 160236, 1999 U.S.Dist. LEXIS 3416 (N.D.Ill., Mar. 8, 1999); *Davis v. Commercial Check Control, Inc.*, 98 C 631, 1999 WL 89556, 1999 U.S. Dist. LEXIS 1682 (N.D.Ill., Feb. 12, 1999); *Hoffman v. Partners in Collections, Inc.*, 93 C 4132, 1993 WL 358158, 1993 U.S.Dist. LEXIS 12702 (N.D.Ill., Sept. 15, 1993); *Vaughn v. CSC Credit Services, Inc.*, 93 C 4151, 1994 WL 449247, 1994 U.S.Dist. LEXIS 2172 (N.D.Ill., March 1, 1994), adopted, 1995 WL 51402, 1995 U.S.Dist. LEXIS 1358 (N.D.Ill., Feb. 3, 1995); *Beasley v. Blatt*, 93 C 4978, 1994 WL 362185, 1994 U.S.Dist. LEXIS 9383 (N.D.Ill., July 11, 1994); *Taylor v. Fink*, 93 C 4941, 1994 WL 669605, 1994 U.S.Dist. LEXIS 16821 (N.D.Ill., Nov. 23, 1994); *Gordon v. Fink*, 93 C 4152, 1995 WL 55242, 1995 U.S.Dist. LEXIS 1509 (N.D.Ill., Feb. 7, 1995); *Brujis v. Shaw*, 876 F.Supp. 198 (N.D.Ill. 1995).

15. *Jenkins v. Heintz* is a leading decision regarding the liability of attorneys under the Fair Debt Collection Practices Act. Mr. Edelman argued it before the Supreme Court and Seventh Circuit. *Avila v. Rubin* and *Nielsen v. Dickerson* are leading decisions on phony "attorney letters." *Suesz v. Med-1 Solutions, LLC* is a leading decision on the FDCPA venue requirements. *McMahon v. LVNV Funding, LLC* is a leading decision on the collection of time-

barred debts.

16.    **Debtors' rights**.  Important decisions include: *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07 C 3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied); z (Illinois statute of limitations for credit card debts); *Parkis v. Arrow Fin Servs.*, 07 C 410, 2008 WL 94798, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Rawson v. Credigy Receivables, Inc.,*  05 C 6032, 2006 WL 418665, 2006 U.S. Dist. LEXIS 6450 (N.D.Ill., Feb. 16, 2006) (same); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) (collection of time-barred debts without disclosure); *Jones v. Kunin*, 99-818-GPM, 2000 WL 34402017, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000) (scope of Illinois bad check statute); *Qualkenbush v. Harris Trust & Sav. Bank*, 219 F. Supp. 2d 935 (N.D.Ill. 2002) (failure to allow cosigner to take over obligation prior to collection action); *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014) (en banc) (venue abuse).

17.    **Telephone Consumer Protection Act.**  The firm has brought a number of cases under the Telephone Consumer Protection Act, 47 U.S.C. §227, which prohibits "junk faxes," spam text messages, robocalls to cell phones, and regulates telemarketing practices. Important junk fax and spam text message decisions include:  *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005); *Sadowski v. Med1 Online, LLC*, 07 C 2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *Benedia v. Super Fair Cellular, Inc.*,  07 C 01390, 2007 WL 2903175, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill., Sept. 26, 2007); *Centerline Equip. Corp. v. Banner Pers. Serv.*, 545 F. Supp. 2d 768 (N.D.Ill. 2008); *ABC Business Forms, Inc. v. Pridamor, Inc.*, 09 C 3222, 2009 WL 4679477, 2009 U.S. Dist. LEXIS 113847 (N.D.Ill. Dec. 1, 2009); *Glen Ellyn Pharmacy, Inc. v. Promius Pharma, LLC*, 09 C 2116, 2009 WL 2973046, 2009 U.S. Dist. LEXIS 83073 (N.D.Ill. Sept. 11, 2009); *Garrett v. Ragle Dental Laboratory, Inc.*, 10 C 1315, 2010 WL 3034709, 2010 U.S. Dist. LEXIS, 108339 (N.D.Ill., Aug. 3, 3010).

18.    The firm has also brought a number of cases complaining of robocalling and telemarketing abuse, in violation of the Telephone Consumer Protection Act.  Decisions in these cases include: *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7th Cir. 2012); *Balbarin v. North Star Capital Acquisition, LLC*, 10 C 1846, 2011 WL 211013, 2011 U.S. Dist. LEXIS 686 (N.D.Ill. Jan. 21, 2011), *motion to reconsider denied,* 2011 U.S. Dist. LEXIS 58761 (N.D.Ill. 2011); *Sojka v. DirectBuy, Inc.*, 12 C 9809 et al., 2014 WL 1089072 (N.D.Ill., Mar. 18, 2014), later opinion, 2014 WL 1304234 (N.D.Ill., March 31, 2014).  The firm has a leadership role in Portfolio Recovery Associates, LLC, Telephone Consumer Protection Act Litigation, MDL No. 2295, and Midland Credit Management, Inc., Telephone Consumer Protection Act Litigation, MDL No. 2286.

19.    **Fair Credit Reporting Act:** The firm has filed numerous cases under the Fair Credit Reporting Act, which include: *Henry v. Teletrack, Inc.,* 11 C 4424,  2012 WL 769763, 2012 U.S. Dist. LEXIS 30495 (N.D.Ill.  March 7, 2012).

20.    Another line of cases under the Fair Credit Reporting Act which we have brought, primarily as class actions, alleges that lenders and automotive dealers, among others, improperly accessed consumers' credit information, without their consent and without having a purpose for doing so permitted by the FCRA.  *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004); *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006); *Perry v. First National Bank*, 459 F.3d 816 (7th Cir. 2006).

21.     **Class action procedure:**  Important decisions include *McMahon v. LVNV Funding, LLC*, 807 F.3d 872 (7th Cir. 2015);  *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877 (7th Cir. 2000); *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832 (7th Cir. 1999); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) (mootness); *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.*, 2015 IL 118644 (Ill.Sup.Ct., October 22, 2015)(mootness),  and *Gordon v. Boden*, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991).

22.     **Landlord-tenant:**  The firm has brought more than 20 class actions against landlords to enforce tenants' rights.  Claims include  failing to pay interest on security deposits or commingling security deposits.  Reported decisions include *Wang v. Williams*, 343 Ill. App. 3d 495; 797 N.E.2d 179 (5th Dist. 2003); *Dickson v. West Koke Mill Vill. P'Ship*, 329 Ill. App. 3d 341; 769 N.E.2d 971 (4th Dist. 2002); and *Onni v. Apartment Inv. & Mgmt. Co.*,  344 Ill. App. 3d 1099; 801 N.E.2d 586 (2nd Dist. 2003).

23.     **Mortgage charges and servicing practices:**  The firm has been involved in dozens of cases, mostly class actions, complaining of illegal charges on mortgages and improper servicing practices.  These include MDL-899, *In re Mortgage Escrow Deposit Litigation*, and MDL-1604, *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation*, as well as the Fairbanks mortgage servicing litigation.  Decisions in the firm's mortgage cases include:  *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir.  2007);  *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760 (7th Cir. 2006); *Christakos v. Intercounty Title Co.*, 196 F.R.D. 496 (N.D.Ill. 2000); *Flippin v. Aurora Bank, FSB*, 12 C 1996, 2012 WL 3260449 , 2012 U.S. Dist. LEXIS 111250 (N.D.Ill. Aug. 8, 2012); *Kesten v. Ocwen Loan Servicing, LLC*, 11 C 6981, 2012 WL 426933, 2012 U.S. Dist. LEXIS 16917  (N.D.Ill. Feb. 9, 2012); *Johnstone v. Bank of America, N.A.*, 173 F.Supp.2d 809 (N.D.Ill. 2001); *Leon v. Washington Mut. Bank, F.A.*, 164 F.Supp.2d 1034 (N.D.Ill. 2001);  *Williamson v. Advanta Mortg. Corp.*, 99 C 4784, 1999 WL 1144940, 1999 U.S. Dist. LEXIS 16374 (N.D.Ill., Oct. 5, 1999); *McDonald v. Washington Mut. Bank, F.A.*, 99 C 6884, 2000 WL 875416, 2000 U.S. Dist. LEXIS 11496 (N.D.Ill., June 22, 2000); *GMAC Mtge. Corp. v. Stapleton*, 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992), leave to appeal denied, 248 Ill.2d 641, 610 N.E.2d 1262 (1993); *Leff v. Olympic Fed. S. & L. Ass'n,* 86 C 3026, 1986 WL 10636 (N.D.Ill. Sept. 19, 1986); *Aitken v. Fleet Mtge. Corp*., 90 C 3708, 1991 WL 152533,, 1991 U.S.Dist. LEXIS 10420 (N.D.Ill. July 30, 1991), later opinion, 1992 WL 33926, 1992 U.S.Dist. LEXIS 1687 (N.D.Ill., Feb. 12, 1992); *Poindexter v. National Mtge. Corp.*, 94 C 45814, 1995 WL 242287, 1995 U.S.Dist. LEXIS 5396 (N.D.Ill., April 24, 1995); *Sanders v. Lincoln Service Corp.*, 91 C 4542, 1993 WL 1125433, 1993 U.S.Dist. LEXIS 4454 (N.D.Ill. April 5, 1993); *Robinson v. Empire of America Realty Credit Corp.*, 90 C 5063, 1991 WL 26593, 1991 U.S.Dist. LEXIS 2084 (N.D.Ill., Feb. 20, 1991); *In re Mortgage Escrow Deposit Litigation*, M.D.L. 899, 1994 WL 496707, 1994 U.S.Dist. LEXIS 12746 (N.D.Ill., Sept. 9, 1994); *Greenberg v. Republic Federal S. & L. Ass'n*, 94 C 3789, 1995 WL 263457, 1995 U.S.Dist. LEXIS 5866 (N.D.Ill., May 1, 1995).

24.     The recoveries in the escrow overcharge cases alone are over $250 million.  *Leff* was the seminal case on mortgage escrow overcharges.

25.     The escrow litigation had a substantial effect on industry practices, resulting in limitations on the amounts which mortgage companies held in escrow.

26.     **Bankruptcy:**  The firm brought a number of cases complaining that money was being systematically collected on discharged debts, in some cases through the use of invalid

reaffirmation agreements, including the national class actions against Sears and General Electric. *Conley v. Sears, Roebuck*, 1:97cv11149 (D.Mass); *Fisher v. Lechmere Inc.*, 1:97cv3065 (N.D.Ill.). These cases were settled and resulted in recovery by nationwide classes. Cathleen Combs successfully argued the first Court of Appeals case to hold that a bankruptcy debtor induced to pay a discharged debt by means of an invalid reaffirmation agreement may sue to recover the payment. *Bessette v. Avco Financial Services*, 230 F.3d 439 (1st Cir. 2000).

27. **Automobile sales and financing practices:** The firm has brought many cases challenging practices relating to automobile sales and financing, including:

a. Hidden finance charges resulting from pass-on of discounts on auto purchases. *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927 (7th Cir. 1998).

b. Misrepresentation of amounts disbursed for extended warranties. *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689 (7th Cir. 1998); *Grimaldi v. Webb*, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996); *Slawson v. Currie Motors Lincoln Mercury, Inc.*, 94 C 2177, 1995 WL 22716, 1995 U.S.Dist. LEXIS 451 (N.D.Ill., Jan. 13, 1995); *Cirone-Shadow v. Union Nissan, Inc.*, 955 F.Supp. 938 (N.D.Ill. 1997) (same); *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302 (N.D.Ill. 1995); *Shields v. Lefta, Inc.*, 888 F. Supp. 891 (N.D.Ill. 1995).

c. Spot delivery. *Janikowski v. Lynch Ford, Inc.*, 98 C 8111, 1999 WL 608714 (N.D.Ill., Aug. 5, 1999); *Diaz v. Westgate Lincoln Mercury, Inc.*, 93 C 5428, 1994 U.S.Dist. LEXIS 16300 (N.D.Ill. Nov. 14, 1994); *Grimaldi v. Webb*, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996).

d. Force placed insurance. *Bermudez v. First of America Bank Champion, N.A.*, 860 F.Supp. 580 (N.D.Ill. 1994); *Travis v. Boulevard Bank*, 93 C 6847, 1994 U.S.Dist. LEXIS 14615 (N.D.Ill., Oct. 13, 1994), modified, 880 F.Supp. 1226 (N.D.Ill. 1995); *Moore v. Fidelity Financial Services, Inc.*, 884 F. Supp. 288 (N.D.Ill. 1995).

e. Improper obligation of cosigners. *Lee v. Nationwide Cassell*, 174 Ill.2d 540, 675 N.E.2d 599 (1996); *Taylor v. Trans Acceptance Corp.*, 267 Ill.App.3d 562, 641 N.E.2d 907 (1st Dist. 1994), leave to appeal denied, 159 Ill.2d 581, 647 N.E.2d 1017 (1995); *Qualkenbush v. Harris Trust & Sav. Bank*, 219 F. Supp. 2d 935 (N.D.Ill. 2002).

f. Evasion of FTC holder rule. *Brown v. LaSalle Northwest Nat'l Bank*, 148 F.R.D. 584 (N.D.Ill. 1993), later opinion, 820 F.Supp. 1078 (N.D.Ill. 1993), later opinion, 92 C 8392, 1993 U.S.Dist. LEXIS 11419 (N.D.Ill., Aug. 13, 1993).

28. These cases also had a substantial effect on industry practices. The warranty cases, such as *Grimaldi, Gibson, Slawson, Cirone-Shadow, Chandler*, and *Shields*, resulted in the Federal Reserve Board's revision of applicable disclosure requirements, so as to prevent car dealers from representing that the charge for an extended warranty was being disbursed to a third party when that was not in fact the case.

29. **Predatory lending practices:** The firm has brought numerous cases challenging predatory mortgage and "payday" lending practices, both as individual and class actions. *Jackson et al v. Payday Financial LLC et al*, 764 F.3d 765 (7th Cir. 2014), *cert. denied*, 135 S.Ct. 1894 (2015); *Livingston v. Fast Cash USA, Inc.*, 753 N.E.2d 572 (Ind. Sup. Ct. 2001); *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748 (7th Cir. 2000); *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d

9

525 (7ᵗʰ Cir. 2007); *Handy v. Anchor Mortg. Corp.*, 464 F.3d 760 (7ᵗʰ Cir. 2006); *Laseter v. Climateguard Design & Installation LLC*, 931 F.Supp.2d 862 (N.D.Ill. 2013); *Hubbard v. Ameriquest Mortg. Co.*, 624 F.Supp.2d 913 (N.D.Ill. 2008); *Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827 (N.D.Ill. 2007); *Pena v. Freedom Mortg. Team, Inc.*, 07 C 552, 2007 WL 3223394, 2007 U.S. Dist. LEXIS 79817 (N.D.Ill., October 24, 2007); *Miranda v. Universal Fin. Group, Inc.*, 459 F. Supp. 2d 760 (N.D.Ill. 2006); *Parker v. 1-800 Bar None, a Financial Corp., Inc.*, 01 C 4488, 2002 WL 215530 (N.D.Ill., Feb. 12, 2002); *Gilkey v. Central Clearing Co.*, 202 F.R.D. 515 (E.D.Mich. 2001); *Van Jackson v. Check 'N Go of Illinois, Inc.*, 193 F.R.D. 544 (N.D.Ill. 2000), later opinion, 114 F. Supp. 2d 731 (N.D.Ill. 2000), later opinion, 123 F. Supp. 2d 1079 (N.D.Ill. 2000), later opinion, 123 F. Supp. 2d 1085 (N.D.Ill. 2000); *Henry v. Cash Today, Inc.*, 199 F.R.D. 566 (S.D.Tex. 2000); *Donnelly v. Illini Cash Advance, Inc.*, 00 C 94, 2000 WL 1161076, 2000 U.S. Dist. LEXIS 11906 (N.D.Ill., Aug. 14, 2000); *Jones v. Kunin*, 99-818-GPM, 2000 WL 34402017, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000); *Davis v. Cash for Payday*, 193 F.R.D. 518 (N.D.Ill. 2000); *Reese v. Hammer Fin. Corp.*, 99 C 716, 1999 U.S. Dist. LEXIS 18812, 1999 WL 1101677 (N.D.Ill., Nov. 29, 1999); *Pinkett v. Moolah Loan Co.*, 99 C 2700, 1999 WL 1080596, 1999 U.S. Dist. LEXIS 17276 (N.D.Ill., Nov. 1, 1999); *Gutierrez v. Devon Fin. Servs.*, 99 C 2647, 1999 U.S. Dist. LEXIS 18696 (N.D.Ill., Oct. 6, 1999); *Vance v. National Benefit Ass'n*, 99 C 2627, 1999 WL 731764, 1999 U.S. Dist. LEXIS 13846 (N.D.Ill., Aug. 26, 1999).

30.　　**Other consumer credit issues:** The firm has also brought a number of other Truth in Lending and consumer credit cases, mostly as class actions, involving such issues as:

　　　　a.　　Phony nonfiling insurance. *Edwards v. Your Credit Inc.*, 148 F.3d 427 (5th Cir. 1998); *Adams v. Plaza Finance Co.*, 168 F.3d 932 (7th Cir. 1999); *Johnson v. Aronson Furniture Co.*, 96 C 117, 1997 U.S. Dist. LEXIS 3979 (N.D.Ill., March 31, 1997), later opinion, 1993 WL 641342 (N.D.Ill., Sept. 11, 1998).

　　　　b.　　The McCarran Ferguson Act exemption. *Autry v. Northwest Premium Services, Inc.*, 144 F.3d 1037 (7th Cir. 1998).

　　　　c.　　Loan flipping. *Emery v. American General*, 71 F.3d 1343 (7th Cir. 1995). *Emery* limited the pernicious practice of "loan flipping," in which consumers are solicited for new loans and are then refinanced, with "short" credits for unearned finance charges and insurance premiums being given through use of the "Rule of 78s."

　　　　d.　　Home improvement financing practices. *Fidelity Financial Services, Inc. v. Hicks*, 214 Ill.App.3d 398, 574 N.E.2d 15 (1st Dist. 1991), leave to appeal denied, 141 Ill.2d 539, 580 N.E.2d 112; *Heastie v. Community Bank of Greater Peoria*, 690 F.Supp. 716 (N.D.Ill. 1989), later opinion, 125 F.R.D. 669 (N.D.Ill. 1990), later opinions, 727 F.Supp. 1133 (N.D.Ill. 1990), and 727 F.Supp. 1140 (N.D.Ill. 1990).

　　　　e.　　Insurance packing. *Elliott v. ITT Corp.*, 764 F.Supp. 102 (N.D.Ill. 1990), later opinion, 150 B.R. 36 (N.D.Ill. 1992).

31.　　**Automobile leases:** The firm has brought a number of a cases alleging illegal charges and improper disclosures on automobile leases, mainly as class actions. Decisions in these cases include *Lundquist v. Security Pacific Automotive Financial Services Corp.*, 993 F.2d 11 (2d Cir. 1993); *Kedziora v. Citicorp Nat'l Services, Inc.*, 780 F.Supp. 516 (N.D.Ill. 1991), later opinion, 844 F.Supp. 1289 (N.D.Ill. 1994), later opinion, 883 F.Supp. 1144 (N.D.Ill. 1995), later opinion, 91 C 3428, 1995 U.S.Dist. LEXIS 12137 (N.D.Ill., Aug. 18, 1995), later opinion,

1995 U.S.Dist. LEXIS 14054 (N.D.Ill., Sept. 25, 1995); *Johnson v. Steven Sims Subaru and Subaru Leasing*, 92 C 6355, 1993 WL 761231, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill., June 9, 1993), and 1993 WL 13074115, 1993 U.S.Dist. LEXIS 11694 (N.D.Ill., August 20, 1993); *McCarthy v. PNC Credit Corp.*, 2:91CV00854 (PCD), 1992 U.S.Dist. LEXIS 21719 (D.Conn., May 27, 1992); *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434 (7th Cir. 1994); *Simon v. World Omni Leasing Inc.*, 146 F.R.D. 197 (S.D.Ala. 1992).

32.　*Lundquist* and *Highsmith* are leading cases; both held that commonly-used lease forms violated the Consumer Leasing Act.  As a result of the *Lundquist* case, the Federal Reserve Board completely revamped the disclosure requirements applicable to auto leases, resulting in vastly improved disclosures to consumers.

33.　**Insurance litigation:** Often securing recovery for a class requires enforcement of the rights under the defendant's insurance policy.  The firm has extensive experience with such litigation.  Reported decisions in such cases include:  *Record-A-Hit, Inc. v. Nat'l Fire Ins. Co.*, 377 Ill. App. 3d 642; 880 N.E.2d 205 (1st Dist. 2007); *Pietras v. Sentry Ins. Co.*, 06 C 3576, 2007 WL 715759, 2007 U.S. Dist. LEXIS 16015 (N.D.Ill., March 6, 2007), later opinion, 513 F. Supp. 2d 983 (N.D.Ill. 2007); *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 06 C 2092, 2007 WL 2608559, 2007 U.S. Dist. LEXIS 65339 (N.D.Ill., Aug. 31, 2007); *National Fire Ins. Co. v. Tri-State Hose & Fitting, Inc.*, 06 C 5256, 2007 U.S. Dist. LEXIS 45685 (N.D.Ill., June 21, 2007); *Nautilus Ins. Co. v. Easy Drop Off, LLC*, 06 C 4286, 2007 U.S. Dist. LEXIS 42380 (N.D.Ill., June 4, 2007).

34.　Some of the other reported decisions in our cases include:  *Elder v. Coronet Ins. Co.*, 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990); *Smith v. Keycorp Mtge., Inc.*, 151 B.R.  870 (N.D.Ill. 1992); *Gordon v. Boden*, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991), leave to appeal denied, 144 Ill.2d 633, 591 N.E.2d 21, cert. denied, U.S. (1992); *Armstrong v. Edelson*, 718 F.Supp. 1372 (N.D.Ill. 1989); *Newman v. 1st 1440 Investment, Inc.*, 89 C 6708, 1993 U.S.Dist. LEXIS 354 (N.D.Ill. Jan. 15, 1993); *Mountain States Tel. & Tel. Co.*, v. District Court, 778 P.2d 667 (Colo. 1989); *Harman v. Lyphomed, Inc.*, 122 F.R.D. 522 (N.D.Ill. 1988); *Haslam v. Lefta, Inc.*, 93 C 4311, 1994 WL 117463, 1994 U.S.Dist. LEXIS 3623 (N.D.Ill., March 25, 1994); *Source One Mortgage Services Corp. v. Jones*, 88 C 8441, 1994 WL 13664, 1994 U.S.Dist. LEXIS 333 (N.D.Ill., Jan. 13, 1994); *Wilson v. Harris N.A.*, 06 C 5840, 2007 WL 2608521, 2007 U.S. Dist. LEXIS 65345 (N.D.Ill. Sept. 4, 2007); *Wendorf v. Landers*, 755 F.Supp.2d 972 (N.D.Ill. 2010); *QuickClick Loans LLC v. Russell*, 407 Ill.App.3d 46; 943 N.E.2d 166 (1st Dist. 2011), *pet. denied*, 949 N.E.2d 1103 (2011) and *Adkins v. Nestle Purina Petcare Co.*, 973 F.Supp.2d 905 (N.D.Ill. 2013).

35.　*Gordon v. Boden* is the first decision approving "fluid recovery" in an Illinois class action.  *Elder v. Coronet Insurance* held that an insurance company's reliance on lie detectors to process claims was an unfair and deceptive trade practice.

Executed at Chicago, Illinois.

/s/ Daniel A. Edelman
Daniel A. Edelman

EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500

Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)